In Re the Marriage of Nancy S. CHALAT n/k/a Nancy S. Shapiro, Petitioner,

and

James H. CHALAT, Respondent.

No. 04SC232.

Supreme Court of Colorado.

May 16, 2005.

Rehearing Denied June 6, 2005.*

* Justice BENDER does not participate.

Jean E. Dubofsky, P.C., Jean E. Dubofsky, Boulder, James J. Keil, Jr., Wheat Ridge, Springer & Steinberg, P.C., Michael P. Zwiebel, Denver, for Petitioner.

Canges Iwashko Bethke & Bailey, P.C., James S. Bailey, Samler and Whitson, Eric A. Samler, Denver, for Respondent.

RICE, Justice.

Petitioner seeks review of the court of appeals' decision reversing the trial court's order obligating Respondent to pay his daughter's full postsecondary education expenses pursuant to a 1984 decree of dissolution. We affirm in part and reverse in part.

Respondent's agreement to pay his daughter's college expenses is not enforceable as a contract term. Rather, Respondent's agreement was adopted by the trial court and incorporated into the court's decree of dissolution. As a result, the trial court retains continuing jurisdiction to modify its orders concerning the daughter, including Respondent's postsecondary education support obligation. The child support guidelines statute does not divest the trial court of this authority.

Respondent, however, may only invoke the trial court's continuing jurisdiction upon a showing of substantial and continuing changed circumstances. Excluding a few specifically delineated situations that are inapplicable here, nothing in the statutory plain language alters this clear, unambiguous requirement. Amendments to the postsecondary education support scheme alone do not automatically trigger a court's continuing jurisdiction to modify child support orders.

## I. Facts and Proceedings Below

This case concerns the modifiability of a separation agreement incorporated into a dissolution of marriage decree in which the father, Respondent James H. Chalat, promised to pay his daughter's college expenses. Respondent and Petitioner Nancy Shapiro, the mother, ended their three-year marriage

in 1984. Their only child, Alexandra Chalat, had been born almost two years earlier.

The parties reached a separation agreement, which constituted the "entire agreement between the parties and, except for any modifications hereinafter agreed to by the parties in writing, no term of this agreement shall be modified after the date hereof except as provided for by law." As part of the agreement, Respondent promised "Child Support." This obligation encompassed "Cash Payment," "Medical Insurance and Expenses," "College Tuition and Expenses," and "Life Insurance."

Regarding the cash payment, Respondent agreed to pay Petitioner $500 per month until Alexandra reached twenty-one years of age or became emancipated. As for college tuition and expenses, Respondent promised to pay the daughter's postsecondary education expenses for four years at an undergraduate college, including tuition, room, board, books, and fees through her twenty-second birthday. If Alexandra chose to attend college and take advantage of Respondent's obligation to pay, it also was agreed that the parties would reassess the monthly $500 payment, considering the actual postsecondary education expenses. The trial court adopted the separation agreement in its 1984 decree of dissolution.

In 1993, Petitioner moved to modify the monthly child support cash payment based upon both parties' "substantially changed" incomes and Colorado's prior adoption of the child support guidelines, section 14–10–115, 6B C.R.S. (1987 & Supp.1992). A written stipulation was reached the following year, in which the parties agreed that the statutory guidelines "set out the standard for determining [the] child support obligations of each party." Accordingly, the stipulation set $500 as the monthly base amount of child support to be augmented annually, as statutorily appropriate, by retroactive lump sum pay-

ments. Importantly, the stipulation also provided that "[a]ll other provisions of the existing Stipulations and Orders of Court, not herein modified, shall remain in full force and effect."

By 2000, the parties had begun discussing Alexandra's upcoming college attendance, and disagreement over the obligation for the postsecondary education expenses arose. Petitioner again moved to modify child support in 2001, alleging a greater than ten percent income increase as a changed circumstance. That same year, Alexandra started college at the University of Vermont. Respondent paid all postsecondary education expenses for the first semester, but then moved for a determination of his actual obligation under the child support guidelines, which he contended were made applicable by the trial court's 1994 modification.

Specifically, Respondent argued that the statutory guidelines capped his postsecondary education obligation well below the absolute level provided for in the 1984 decree of dissolution. Petitioner, in contrast, argued that the "College Tuition and Expenses" provision was not modifiable under the child support guidelines because the decree had been entered before 1991. And, even if it were modifiable, according to Petitioner, the burden was on Respondent to show changed circumstances. Moreover, Petitioner argued that Respondent had made a promise to pay all of Alexandra's college costs—one he could not later avoid by relying on subsequent, less onerous legislative requirements.

After a hearing, the magistrate found that the postsecondary education expenses provision in the 1984 separation agreement was contractual in nature and could not be modified. In addition, the magistrate found that Respondent could have addressed postsecondary education expenses in the 1994 modification, but chose not to, thereby reaffirming his decade-earlier promise.[1] Then, examin-

---

1. Respondent, however, argues that the 1984 decree's child support provisions, including his obligation to pay Alexandra's postsecondary education expenses, were modified by the 1994 stipulation. According to Respondent, the parties intended in the stipulation, as in the separation agreement, to treat college tuition and expenses as a subset of child support, and therefore, cap his obligation to pay Alexandra's postsecondary education expenses at the level dictated by the statutory guidelines. While certiorari was neither sought nor granted on this issue, we note that Respondent's argument relies on his unsupported interpretation of "child support."

ing the child support guidelines statute, the magistrate found that it was ambiguous concerning retroactive modification. The magistrate looked at the legislative history and selectively relied on one representative's equivocal statement that modification of pre-1991 orders was not allowed. Even if modifiable, the magistrate concluded that Respondent was not entitled to modification because he failed to show a substantial and continuing change of circumstances.

Accordingly, the magistrate held Respondent to his promise in the 1984 separation agreement, ordering him responsible for Alexandra's tuition, room, board, books, and fees at the University of Vermont until she reached the age of twenty-two. When Alexandra transferred to the University of Pennsylvania after her freshman year, the magistrate entered a second order directing Respondent to pay that school's tuition, room, board, books, and fees. The trial court affirmed, finding that Respondent was "still obligated to support his child" under a "nonmodifiable contract."

On Respondent's appeal, the court of appeals held that the magistrate and the trial court should have modified Respondent's postsecondary education expense obligation in accordance with the child support guidelines statutory cap. *In re Marriage of Chalat*, 94 P.3d 1191, 1194 (Colo.App.2004).

Agreeing with Respondent's interpretation, the court of appeals concluded that postsecondary education support orders entered before July 1, 1997 are modifiable, and no showing of changed circumstances is required. *Id.* at 1195–96. Thus, the court of appeals rejected the magistrate and the trial court's statutory interpretation as well as their conclusion that the terms of the 1984 separation agreement were contractual and binding. *Id.* at 1194 (citing § 14–10–112(2), (6), 5 C.R.S. (2003)).

Petitioner sought further review, and we granted certiorari to determine whether the trial court can modify the parties' 1984 decree of dissolution, and if so, whether Respondent had to first show changed circumstances.[2] Upon review, we affirm in part and reverse in part. We hold that since the trial court retained continuing jurisdiction to modify the 1984 decree, not limited by the child support guidelines statute, Respondent's postsecondary education support obligation may be modified, but only upon a showing by Respondent of substantial and continuing changed circumstances.

## II. Colorado Child Support Statutes

To place the above events in the proper legal context, it is helpful to summarize Colorado's child support statutes and their re-

---

In 1984, Respondent agreed to pay child support, which included a monthly cash payment, future college tuition and expenses, and other incidental expenses related to his daughter's care. Yet, elsewhere in the agreement, the parties distinguished between child support and college tuition and expenses. Therefore, it cannot be said that the parties definitively meant just one or all of the listed subsets whenever they used the phrase child support.

This lack of precision is further evidenced by the 1994 stipulation, wherein the parties referred almost exclusively to child support. From the context of the stipulation, it is clear that in doing so, the parties were addressing Alexandra's monthly child support in the form of Respondent's cash payment. Indeed, the stipulation provided that in addition to the monthly child support, Respondent was to maintain health insurance, demonstrating that when the parties intended to address support other than the monthly payment, they named that form of support directly. No mention, however, was made of college tuition and expenses. Thus, nothing in the 1994 stipulation suggests that the parties

agreed to have the statutory guidelines govern Respondent's postsecondary education obligation as well as monthly support.

For these reasons and as reflected by the issues on which we granted certiorari, it is Respondent's as yet unmodified postsecondary education support obligation in the 1984 decree that is properly before us.

**2.** The issues on which certiorari was granted are as follows:

1. Did the court of appeals err in holding, contrary to the plain language of section 14–10–115(1.5)(c.5), C.R.S., that a father's promise in a 1984 separation agreement to pay for all of his daughter's college expenses could be reduced to the amount that the father would be required to pay under the child support guidelines?

2. If the separation agreement is subject to modification, did the court of appeals err in holding that a reduction in the amount agreed to be paid for college expenses does not require a showing of changed circumstances, despite statutory provisions to the contrary?

peated amendments.[3] In 1984 as it does today, the Uniform Dissolution of Marriage Act ("the Act"), sections 14–10–101 to –133, C.R.S. (2004), allowed parties to end their marriage amicably by negotiating a separation agreement.[4] Among the terms to which the parties could agree was postsecondary education support, subject to final adoption by the court.

In 1986, the General Assembly overhauled the child support guidelines to follow a formulaic calculation method. § 14–10–115(3), 6 C.R.S. (Supp.1986). In addition, reasonable and necessary college expenses were listed as an extraordinary education expense that could be added to the basic child support obligation when agreed by the parties and approved by the court. § 14–10–115(13). This subsection was changed the following year to allow for higher education expenses by either agreement of the parties or order of the court, but the support was still considered an "extraordinary" expense. § 14–10–115(13), 6B C.R.S. (1987). Further amendment came in 1990, when the General Assembly allowed room and board expenses to reduce monthly child support, in order to accommodate the child's residence away from the custodial parent during college. § 14–10–115(13), 6B C.R.S. (Supp.1990).

In 1991, more substantial changes were enacted as the General Assembly no longer considered college expenses an extraordinary adjustment to the basic child support schedule. § 14–10–115(13)(a)(III), 6B C.R.S. (Supp.1991). Instead, the court could order parents to pay reasonable postsecondary education costs whenever "appropriate," although not beyond the child's twenty-first birthday. § 14–10–115(1.5)(b)(I). Coinciding with this shift from an extraordinary adjustment to an appropriate expense, the General Assembly also set child emancipation at age nineteen. § 14–10–115(1.5)(a). This terminated child support unless the parties agreed

otherwise in a written stipulation, the child was disabled, or the court ordered postsecondary education support. § 14–10–115(1.5)(a)(I)–(III). The 1991 amendments were made applicable to all present and future child support obligations, except the codified emancipation age did not apply to children who turned nineteen before July 1, 1991. § 14–10–115(1.5)(c).

The General Assembly quickly retreated from its 1991 high point of parental obligation, enacting a series of limits on court-ordered postsecondary support. For example, a 1992 amendment disallowed requiring a parent to provide both child support and postsecondary education support for the same child. § 14–10–115(1.5)(b)(I), 6B C.R.S. (Supp.1992). Moreover, in 1993, the General Assembly capped a parent's postsecondary education obligation at the amount the parent would owe under the statutory guidelines schedule of basic child support, essentially limiting the postsecondary education obligation to what the parent had been providing monthly. § 14–10–115(1.5)(b)(I), 6B C.R.S. (Supp.1993). And, a 1994 change removed, among other things, room and board from the definition of postsecondary education expenses. *Compare* § 14–10–115(1.5)(e), 6B C.R.S. (Supp.1994), *with* § 14–10–115(1.5)(e), 6B C.R.S. (Supp.1993).

Finally, by 1997, the General Assembly had completely reversed its course, terminating the court's authority to order postsecondary education support absent an agreement by the parties. *See* § 14–10–115(1.5)(c), (1.6), (1.7), 5 C.R.S. (1997). However, throughout the just described legislative evolution of the courts' discretionary ability to order postsecondary education support, the General Assembly did not disturb the parties' option of agreeing to pay their child's college costs in a separation agreement or stipulation.

---

**3.** For more information on postsecondary education support, focusing on legislative history and statutory construction, see generally Helen C. Shreves, *Post-secondary Education Expenses: A Multi-tiered Approach,* Colo. Law., Jan. 1998, at; Helen C. Shreves & Richard A. Harris, *Post-secondary Education Costs: Forging Through a* *Legislative Labyrinth,* Colo. Law., Jan. 1995, at 43 [hereinafter *Forging Through* ].

**4.** Separation agreements are discussed more fully below with citations to specific statutory provisions in Part III.A.

## III. Analysis

### A. Respondent's Promise to Pay Post-secondary Education Expenses is Not Enforceable as a Contract Term

The ultimate issue in this case is modification of the trial court's decree of dissolution which incorporated the parties' 1984 separation agreement. Before determining whether the trial court has continuing jurisdiction under the Act to modify the postsecondary support term in its decree and whether Respondent must show substantial and continuing changed circumstances, we first must address enforcement under a contract theory.

■ Petitioner suggests throughout her briefs that Respondent made a promise to pay all of Alexandra's college costs, without limitation, and that he should not be able to unilaterally escape his bargain upon subsequent action by the General Assembly that reduces his support obligation. The magistrate seemed to adopt this rationale, finding that the 1984 separation agreement "is contractual in nature and non-modifiable," and the trial court affirmed, finding that postsecondary education support "was part of an enforceable contract." We agree with the court of appeals, however, that Respondent's promise to pay his daughter's postsecondary education expenses is not enforceable as a contract term.

Subsection 14–10–112(1), 6B C.R.S. (1987), governed the formulation of separation agreements in 1984,[5] providing that: "[t]o promote the amicable settlement of disputes ... the parties may enter into a written separation agreement." Yet, negotiated terms concerning child custody, support, and visitation are not binding on the court. § 14–10–112(2). And, "[i]f the court finds the separation agreement unconscionable," then it "may request the parties to submit a revised separation agreement, or the court may make orders for the disposition of property, support, and maintenance." § 14–10–112(3), C.R.S. (2004).

Apart from these two exceptions, the terms of the parties' separation agreement must be set forth or identified in the court's decree of dissolution. § 14–10–112(4). Such terms "set forth in the decree may be enforced by all remedies available for the enforcement of a judgment, ... *but are no longer enforceable as contract terms.*" § 14–10–112(5) (emphasis added); *see also In re Marriage of Manzo*, 659 P.2d 669, 671 (Colo. 1983) ("Prior to its incorporation in a dissolution decree a separation agreement is a contract between the parties to a marriage.") (citing *In re Marriage of Deines*, 44 Colo. App. 98, 608 P.2d 375 (1980)); *In re Marriage of Corbin*, 42 Colo.App. 200, 202, 591 P.2d 1046, 1048 (1979) (since trial court was not bound by child support terms, but had not found them unconscionable, "the court was as much, or more, a 'source' of the support order as were the parties by their agreement").

■ By the express terms of the separation agreement statute, Respondent's promise in the 1984 separation agreement to pay all of his daughter's college costs is not enforceable as a contract term. *See* § 14–10–112(5). Once adopted by the trial court and set forth in its decree of dissolution, the parties' separation agreement was no longer contractual in nature. *See In re Marriage of Manzo*, 659 P.2d at 671. Thus, the magistrate and the trial court's conclusion that the postsecondary education provision is non-modifiable because it is contractually enforceable was erroneous.

### B. The Trial Court Has Continuing Jurisdiction under the Act to Modify its 1984 Decree

Since Petitioner may not enforce Respondent's promise to pay all of Alexandra's college costs as a contract term, we must decide whether the trial court has continuing jurisdiction under the Act to modify the postsecondary education support provision in its 1984 decree of dissolution. Upon review, we conclude that it does.

---

5. Section 14–10–112 is still in effect and has undergone only minor amendments since 1987—specifically, changing the words "visitation" to "parenting time," ch. 165, sec. 6, 1993 Colo. Sess. Laws 575, 576–77, and "custody to 'allocation of parental responsibilities,' " ch. 310, sec. 39, 1998 Colo. Sess. Laws 1376, 1397.

■ It is well established that a court retains continuing jurisdiction over the support of minor children after issuance of a decree of separation or dissolution pursuant to the Act. *Gonzales v. Dist. Court*, 629 P.2d 1074, 1075 (Colo.1981) (citing, *inter alia, Sauls v. Sauls,* 40 Colo.App. 275, 277, 577 P.2d 771, 773 (1977)). In exercise of this jurisdiction, the court generally may enforce or modify its support orders. *E.g., In re Marriage of Nussbeck,* 974 P.2d 493, 497 (Colo.1999) (enforcement) (citing *Gonzales,* 629 P.2d at 1075); *In re Marriage of Eaton,* 894 P.2d 56, 59 (Colo.App.1995) (modification) (citing § 14–10–115(1.5)(d), 6B C.R.S. (Supp. 1994); § 14–10–122(1)(a), 6B C.R.S. (Supp. 1994)); *see also* § 14–10–115(3)(a), C.R.S. (2004) (assumes modification in providing that "[i]n any action to establish or modify child support ... the child support guideline ... shall be used as a rebuttable presumption for the establishment or modification of the amount of child support").[6]

■ One strictly regulated form of child support, postsecondary education support, encompasses the expenses of tuition, books, and fees associated with attending a college, university, or vocational education program. § 14–10–115(1.5)(e), C.R.S. (2004). College expenses may be modified under the Act in the same manner as child support. § 14–10–115(1.5)(d), C.R.S. (2004), *cited in In re Marriage of Eaton,* 894 P.2d at 59; *see also* § 14–10–115(1.5)(c), C.R.S. (2004) ("This subsection (1.5) [the postsecondary education support guidelines] shall apply to all child support obligations established or modified as a part of any proceeding ... prior to July 1, 1997."), *cited in In re Marriage of Crowder,* 77 P.3d 858, 862 (Colo.App.2003). Thus, just like basic child support, a postsecondary education support order generally may be modified by the court anytime after it is established.

■ It does not matter that the support order may have originated in separation agreement terms; the court still retains jurisdiction for modification. *See In re Marriage of Crowder,* 77 P.3d at 862 ("The plain language of [subsection 14–10–115(1.5)(c)] creates no exemption for separation agreements entered into under and consistent with earlier legislation."). Indeed, while the parties can agree to postsecondary education support, such terms do not bind the court, and the parties cannot preclude or limit subsequent court modification of terms concerning child support. § 14–10–112(1)–(3), (6), C.R.S. (2004); *e.g., In re Marriage of Smith,* 928 P.2d 828, 831 (Colo.App.1996). This restriction is based on "[t]he law and policy of this state ... that the needs of the children are of paramount importance." *In re Marriage of Miller,* 790 P.2d 890, 892 (Colo.App. 1990) (citing *Wright v. Wright,* 182 Colo. 425, 514 P.2d 73 (1973)). And, as one commentator noted, "children are not parties to separation agreements and should not be bound by them." 2 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States,* § 19.13, at 461 (2d ed.1987).

As a result, it seems straightforward that the trial court could modify the 1984 decree ordering postsecondary education support in this case. Yet, arguing against modification, Petitioner cites subsection 14–10–115(1.5)(c.5), which provides that:

An order for postsecondary education expenses *entered between July 1, 1991, and July 1, 1997,* may be modified pursuant to this subsection (1.5) to provide for postsecondary education expenses subject to the statutory provisions for determining the amount of a parent's contribution to the costs of postsecondary education, the limitations on the amount of a parent's contribution, and the changes to the definition of postsecondary education consistent with this section as it existed on July 1, 1994.

---

**6.** Cited in *In re Marriage of Eaton,* subsection 14–10–122(1)(a), C.R.S. (2004), as amended, recognizes a court's continuing jurisdiction to modify child support provisions:

[E]xcept as otherwise provided in subsection (5) of this section, the provisions of any decree respecting child support may be modified only as to installments accruing subsequent to the

filing of the motion for modification and only upon a showing of changed circumstances that are substantial and continuing ....

The referenced subsection 14–10–122(5), which was inserted in 1998, concerns mutually agreed upon changes of physical care and is not relevant to this case. *See infra* note 8.

(emphasis added). Relying on a negative inference, Petitioner argues that the statute does not allow modification of the 1984 decree because only postsecondary education support orders entered between July 1, 1991 and July 1, 1997 may be modified. We disagree.

Our task in construing statutes, which we review de novo, *e.g., Dep't of Labor & Employment v. Esser,* 30 P.3d 189, 194 (Colo.2001), is to give effect to the intent of the General Assembly and its chosen legislative scheme, looking first to the plain language. *E.g., Colorado Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585 (Colo.2005); *People v. Yascavage,* 101 P.3d 1090, 1093 (Colo. 2004). If the statute is clear and unambiguous on its face, then we will apply the statute as written, *e.g., Vigil v. Franklin,* 103 P.3d 322, 327 (Colo.2004), because " 'it may be presumed that the General Assembly meant what it clearly said,' " *Colorado Water Conservation Bd.,* 109 P.3d at 593 (quoting *Pierson v. Black Canyon Aggregates, Inc.,* 48 P.3d 1215, 1218–19 (Colo.2002)).

By its express terms, subsection 14–10–115(1.5)(c.5) addresses only postsecondary support orders entered between 1991 and 1997. Such orders plainly may be modified to comply with subsection (1.5). The provision does not purport to address postsecondary education support orders entered either before 1991 or after 1997. Thus, the General Assembly did not evidence an intent to disallow modification of pre–1991 postsecondary education support orders. To imply a limit on modification as Petitioner does ignores the plain language of the statute. Had the General Assembly intended to disallow modification of pre–1991 postsecondary education support orders, it would have drafted the statute to provide that only orders for postsecondary education expenses entered between July 1, 1991 and July 1, 1997 may be modified.

The lack of legislative intent to disallow pre–1991 modification is further evidenced by the second sentence of subsection 14–10–115(1.5)(c.5), which we must examine in order to construe the statute as a whole. *See, e.g., Anderson v. Longmont Toyota, Inc.,* 102 P.3d 323, 327 (Colo.2004). The second sentence states that "[a]n order for child support entered prior to July 1, 1997, that does not provide for postsecondary education expenses shall not be modified pursuant to this subsection (1.5)." § 14–10–115(1.5)(c.5). Therefore, if a pre–1997 order does not provide for postsecondary education support, the court may not later impose it through modification. Necessarily, this applies to all pre–1991 child support orders as well.

Contrary to Petitioner's assertion, the latter part of subsection 14–10–115(1.5)(c.5) shows both that the General Assembly contemplated modification of pre–1991 child support orders when it drafted the statute and that it made a legislative policy choice against prohibiting modification of pre–1991 postsecondary education support orders. Rather, the General Assembly chose to limit modification only of pre–1997 child support orders that do not already provide for postsecondary education support. Again, had the General Assembly intended to disallow modification of pre–1991 postsecondary education support orders, it would not have plainly limited the second sentence of subsection 14–10–115(1.5)(c.5) to only those orders that do not provide for postsecondary education expenses.

We will not read in a statutory exception to pre–1991 postsecondary education support order modifiability that the General Assembly opted not to include. *See Dikeou v. Dikeou,* 928 P.2d 1286, 1292–93 n. 4 (Colo. 1996). Rather, fulfilling our duty to construe statutes according to their plain meaning so as to best effectuate the General Assembly's intent and purpose, we apply subsection 14–10–115(1.5)(c.5) as written. *See, e.g., Colorado Water Conservation Bd.,* 109 P.3d at 597–98; *Vigil,* 103 P.3d at 327. In doing so, we avoid Petitioner's strained, forced construction. *See, e.g., Concerned Parents of Pueblo, Inc. v. Gilmore,* 47 P.3d 311, 313 (Colo.2002).

On its face, subsection 14–10–115(1.5)(c.5) does not upset the well established rule of modifiability established throughout the Act and recognized by numerous decisions of Colorado's appellate courts. *See* § 14–10–112(6); § 14–10–115(1.5)(c), (d), (3)(a); § 14–10–122(1)(a); *Gonzales,* 629 P.2d at 1075; *In*

*re Marriage of Smith,* 928 P.2d at 831; *In re Marriage of Eaton,* 894 P.2d at 59. Only by resort to Petitioner's negative inference can subsection 14–10–115(1.5)(c.5) be construed to disallow modification of postsecondary education support orders entered prior to 1991.

■ "Amendments by implication are not favored," *Nelson v. Nelson,* 72 Colo. 20, 22, 209 P. 810, 811 (1922) (citing cases), and we will not presume that the General Assembly intended to change preexisting law absent a clear expression, *e.g., Scholz v. Metro. Pathologists, P.C.,* 851 P.2d 901, 911 (Colo. 1993), or a manifest inconsistency rendering harmonization unworkable, *see, e.g., Fuhrer v. Dep't of Motor Vehicles,* 197 Colo. 325, 328, 592 P.2d 402, 404 (1979). Here, the General Assembly has not expressed a clear intent to change the preexisting law allowing modifiability, *see, e.g., Scholz,* 851 P.2d at 911, and absent Petitioner's unsupported construction, there is no manifest inconsistency that we need harmonize, *see, e.g., Fuhrer,* 197 Colo. at 328, 592 P.2d at 404.

In addition, our plain meaning construction of subsection 14–10–115(1.5)(c.5) is fully consistent with the General Assembly's chosen legislative scheme. As discussed above in Part II, a court was empowered to order appropriate and reasonable postsecondary education support between 1991 and 1997, even if the parties had not agreed to such in a separation agreement or stipulation. Since this authority was revoked in 1997, it makes perfect sense that the General Assembly enacted subsection 14–10–115(1.5)(c.5). In accordance with its newly adopted policy disfavoring postsecondary education support, the General Assembly made it clear that all postsecondary education support orders entered during the court's period of sua sponte authority—1991 to 1997—could be modified to comply with the stringent 1993 support cap and 1994 definition of postsecondary education expenses. § 14–10–115(1.5)(c.5). And, as the court of appeals explained, this was necessary because the 1994 amendments were not enacted retroactively. *In re Marriage of Chalat,* 94 P.3d at 1195 (citing *Forg-*

*ing Through, supra,* at 44–45 (quoting ch. 266, sec. 29, 1994 Colo. Sess. Laws 1535, 1549)).

The second provision in subsection 14–10–115(1.5)(c.5) is likewise easily understood because the General Assembly also expressed its intent that support orders entered prior to 1997 which did not already provide for postsecondary education support could not be modified to include even the minimal college expenses allowed under the statutory cap.

Accordingly, we apply the statute's plain language and hold that subsection 14–10–115(1.5)(c.5) allows the modification of pre–1991 postsecondary education support orders. Petitioner and Respondent's separation agreement provided for Respondent's financial support of Alexandra's college education. And, the separation agreement was adopted by the trial court in its 1984 decree of dissolution. As a result, the trial court effectively entered an order obligating Respondent to pay his daughter's postsecondary education expenses at that time and retained continuing jurisdiction to later modify it. This authority was not divested by subsection 14–10–115(1.5)(c.5) of the child support guidelines statute. Therefore, although upon the different grounds set forth above, we affirm the court of appeals' ruling that the 1984 postsecondary education support order could be modified.[7]

## C. There Must Be a Showing of Changed Circumstances to Invoke the Court's Modification Power

Having decided that the General Assembly's 1997 amendments to the child support guidelines statute did not preclude the trial court's continuing jurisdiction to modify its 1984 decree ordering postsecondary education support, we also must rule on whether the party seeking modification, in this case Respondent, must show substantial and continuing changed circumstances to invoke that jurisdiction. The court of appeals held that various statutory provisions in the Act evidenced the General Assembly's intent that its postsecondary education support statutory

---

**7.** Consequently, we need not consider Respondent's equal protection argument raised on behalf of his other minor children that Petitioner's construction of subsection 14–10–115(1.5)(c.5) is "[c]onstitutionally doubtful."

changes alone were sufficient basis for modification. *In re Marriage of Chalat,* 94 P.3d at 1196. Therefore, Respondent was entitled to have his obligation reduced in accordance with the cap in subsection 14–10–115(1.5)(b)(I), C.R.S. (2004), by alleging nothing more than a statutory change concerning postsecondary education support. *In re Marriage of Chalat,* 94 P.3d at 1196.

■ We disagree. Section 14–10–122 plainly establishes substantial and continuing changed circumstances as the prerequisite to modification of all postsecondary education support orders, and the only enumerated exceptions are inapplicable to this case. Nothing in the plain language of the statutes relied on by the court of appeals alters this clear, unambiguous requirement. Accordingly, we hold that absent application of the statute's narrow age of emancipation or medical insurance exceptions, the court's continuing jurisdiction to modify postsecondary education support orders is only invoked upon a showing of substantial and continuing changed circumstances by the party seeking modification.

Subsection 14–10–115(1.5)(d) states that "[p]ostsecondary education support may be established or modified in the same manner as child support under this article [10]." *See supra* Part III.B. Therefore, modification of orders for postsecondary education support falls within the court's authority, but it only may be accomplished in the same way as child support orders. And, all provisions governing the procedure of child support order modification also apply to modifications of postsecondary education support orders.

One such requirement is a threshold showing of substantial and continuing changed circumstances, set forth in subsection 14–10–122(1)(a) of the Act:

[E]xcept as otherwise provided in subsection (5) of this section, the provisions of

any decree respecting child support may be modified only as to installments accruing subsequent to the filing of the motion for modification and only upon a showing of changed circumstances that are substantial and continuing or on the ground that the order does not contain a provision regarding medical support, such as insurance coverage, payment for medical insurance deductibles and copayments, or unreimbursed medical expenses.[8]

There is no dispute that this provision alone would require a showing of substantial and continuing changed circumstances to invoke the court's continuing jurisdiction to modify a postsecondary education support order. Indeed, the division in *In re Marriage of Eaton,* reached this very conclusion. 894 P.2d at 59 (affirming trial court's denial of father's modification motion, which was based solely on statutory amendments and did not allege changed circumstances).

Yet, according to the court of appeals division below, *In re Marriage of Eaton*'s interpretation is not persuasive because it did not consider subsection 14–10–122(4), enacted in 1991, and was decided before the General Assembly's enactment of subsections 14–10–115(1.5)(c) and (c.5) in 1997. Thus, the precise issue before us is whether these statutory provisions create an exception to the changed circumstances requirement for postsecondary education support order modification. Upon review, we conclude that none of the statutes establishes an exception under which Respondent may relieve himself of the burden of showing substantial and continuing changed circumstances.

We turn first to subsection 14–10–122(4), which provides that:

Notwithstanding the provisions of subsection (1) of this section, the provisions of any decree respecting child support may

---

8. Subsection (5) establishes an exception to the requirement that only installments accruing after the motion may be modified, and it is not factually applicable to this case:

Notwithstanding the provisions of subsection (1) of this section, when a mutually agreed upon change of physical care occurs, the provisions for child support of the obligor under the existing child support order, if modified pursuant to this section, will be modified as of the date when physical care was changed. When a mutually agreed upon change of physical care occurs, parties are encouraged to avail themselves of the provision for updating and modifying a child support order without a court hearing, that is set forth in section 14–10–115(3)(b)(II).

§ 14–10–122(5).

be modified as a result of the change in age for the duty of support as provided in section 14–10–115(1.5), but only as to installments accruing subsequent to the filing of the motion for modification; except that section 14–10–115(1.5)(a) does not apply to modifications of child support orders with respect to a child who has already achieved the age of nineteen as of July 1, 1991.

§ 14–10–122(4). Referencing subsection (1) of section 14–10–122, this provision establishes an exception to the changed circumstances requirement. Yet, contrary to the court of appeals' erroneous construction, this exception is not unlimited in scope and application.

The plain language of subsection 14–10–122(4) is clearly and unambiguously limited to modifications which are prompted by the 1991 enactment setting emancipation at age 19. While there were several other legislative enactments regarding child support in 1991, let alone numerous amendments in subsequent years that culminated in the termination of a court's sua sponte authority to order postsecondary education support in 1997, see supra Part II, the General Assembly's specific enumeration of one of these statutory changes cannot be construed as an implied blanket reference to all statutory changes that have been or ever will be enacted.

In subsections 14–10–122(1) and (4), the General Assembly clearly specified two particular conditions pursuant to which substantial and continuing changed circumstances did not have to be shown. The language employed is plain, unambiguous, and narrowly drafted. Thus, it is clear that the General Assembly intended modification of a postsecondary education support order to be predicated upon a showing of substantial and continuing changed circumstances, unless one of two exceptions applied—either "that the order does not contain a provision regarding medical support," § 14–10–122(1)(a), or that modification results from "the change in age for the duty of support as provided in section 14–10–115(1.5)," § 14–10–122(4).

 These are the only two exceptions listed, and "when the legislature speaks with exactitude, we must construe the statute to mean that the inclusion or specification of a particular set of conditions necessarily excludes others." *Lunsford v. W. States Life Ins.,* 908 P.2d 79, 84 (Colo.1995) (citing cases). Therefore, applying the unambiguous statute as written, see, e.g., *Colorado Water Conservation Bd.,* 109 P.3d at 597–98; *Vigil,* 103 P.3d at 327, we must presume that the General Assembly, having chosen to speak with such exactitude, did not intend any implied exceptions, see, e.g., *Lunsford,* 908 P.2d at 84. Straining the statute to read otherwise would ignore its plain language, see, e.g., *Gilmore,* 47 P.3d at 313, and read in a judicially created exception that the General Assembly did not include, see *Dikeou,* 928 P.2d at 1292–93 n. 4.

The other statutes relied on by the court of appeals similarly do not create an exception to the threshold requirement of substantial and continuing changed circumstances. Subsection 14–10–115(1.5)(c) states that "subsection (1.5) [the postsecondary education support guidelines] shall apply to all child support obligations established or modified as a part of any proceeding … prior to July 1, 1997." § 14–10–115(1.5)(c). While this provision rightly assumes the occurrence of support order modification, see supra Part III.B, it does not trump subsection 14–10–122(1)(a) and allow modification without a showing of substantial and continuing changed circumstances.

Rather, the plain language of subsection 14–10–115(1.5)(c) unambiguously provides that once the court's continuing jurisdiction to modify postsecondary education support orders has been invoked, the guidelines in subsection (1.5) must be applied. Thus, construing it as plainly written, see, e.g., *Vigil,* 103 P.3d at 327, we conclude that section 14–10–115(1.5)(c) does not apply whatsoever to the question of what burden must be met in order to invoke a court's continuing jurisdiction.

Moreover, as just discussed, the General Assembly spoke with exactitude in section 14–10–122, setting forth a clear requirement of substantial and continuing changed circumstances, as well as two narrow exceptions. Accordingly, we must presume the

enumerated exceptions to be an exclusive list. *See, e.g., Lunsford,* 908 P.2d at 84. Had the General Assembly intended subsequent statutory amendments alone to invoke the court's continuing jurisdiction to modify postsecondary education support orders, it would have provided such an exception. Since the General Assembly chose not to, we will not reach a contrary policy conclusion, *see, e.g., Denver Milk Producers v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers' Union,* 116 Colo. 389, 415, 183 P.2d 529, 541 (1947), and read an exception by implication into the plain, unambiguous statute, *see Dikeou,* 928 P.2d at 1292–93 n. 4.

The court of appeals also cited subsection 14–10–115(1.5)(c.5) to "buttress[ ]" its conclusion. *In re Marriage of Chalat,* 94 P.3d at 1196. Yet, it is clear from the plain meaning of subsection (c.5)'s unambiguous language, that the General Assembly did not intend the statutory changes capping postsecondary education support obligations to automatically invoke the court's continuing modification jurisdiction—that is, without a showing of substantial and continuing changed circumstances. Subsection 14–10–115(1.5)(c.5) merely states that postsecondary education support orders entered between 1991 and 1997 may be modified to comply with the support obligation cap in subsection (1.5), while child support orders entered before 1997 that do not already provide for postsecondary education support may not be modified to include college expenses. *See supra* Part III.B.

Subsection 14–10–115(1.5)(c.5) does not address, let alone exempt, the substantial and continuing changed circumstances burden that must be shown in order to invoke a court's continuing jurisdiction to modify support orders. Moreover, the General Assembly plainly chose to enumerate two exceptions to the changed circumstances requirement in section 14–10–122, and we will not presume or read in by implication an additional exception in subsection 14–10–115(1.5)(c.5) that was not clearly expressed.

*See, e.g., Lunsford,* 908 P.2d at 84; *see Dikeou,* 928 P.2d at 1292–93 n. 4. Thus, following our construction of subsection 14–10–115(1.5)(c), we conclude that nothing in subsection (c.5) evidences the General Assembly's intent to allow modification of postsecondary education support orders absent a showing of substantial and continuing changed circumstances.

While finding no legislative expression in the Act that the enactment of amendments to the postsecondary education support scheme alone automatically triggers a court's continuing jurisdiction to modify child support orders, we are not suggesting that application of the statutory changes to the facts of a specific case such as Respondent's could not constitute substantial and continuing changed circumstances. For example, subsections 14–10–122(1)(b) and 14–10–115(3)(a), 6B C.R.S. (1987), as construed in *In re Marriage of Pugliese,* 761 P.2d 277, 278 (Colo. App.1988), "create[ ] a rebuttable presumption that a modification of child support must be granted whenever application of the child support guidelines would result in more than a[ten] percent change in the amount of support due." [9] Accordingly, the court of appeals division in *In re Marriage of Pugliese* did not allow modification solely on the basis of the statutory change; instead, it gave effect to the General Assembly's unambiguous intent that when the amended child support guidelines cause a defined change in support obligation—at least ten percent, the result is a per se substantial and continuing change of circumstances. *See id.*

■ For the reasons set forth above, we reverse the court of appeals and hold that absent application of section 14–10–122's narrow exceptions, the court's continuing jurisdiction to modify postsecondary education support orders is only invoked upon a showing of substantial and continuing changed circumstances by the party seeking modification.

---

**9.** Subsection 14–10–122(1)(b), C.R.S. (2004), provides that:

> Application of the child support guideline set forth in section 14–10–115(3) to (16) to the circumstances of the parties at the time of the

filing of a motion for modification of the child support order which results in less than a ten percent change in the amount of support due per month shall be deemed not to be a substantial and continuing change of circumstances.

Respondent sought modification on the sole basis of the postsecondary education support cap in subsection 14–10–115(1.5)(b)(I). This justification alone is insufficient under the Act to invoke the trial court's continuing jurisdiction. Respondent must show a substantial and continuing change of circumstances, and the General Assembly's enactment of a postsecondary education support cap does not overcome this requirement and thereby automatically invoke the court's continuing jurisdiction.

## IV. Attorney Fees

Petitioner requests us to order Respondent to pay her attorney fees and costs incurred in this certiorari appellate review, citing section 14–10–119, C.R.S. (2004), of the Act and C.A.R. 39.5. Respondent, however, argues that such an imposition would be unjust and further directs our attention to the parties' fee shifting agreement. Without considering the appropriateness of attorney fees and costs for either party, we entrust to the trial court "the determination of entitlement to or the amount of any attorney fees" and costs on remand. C.A.R. 39.5.

The trial court and the magistrate are more familiar with the parties' comparative "financial resources," having already awarded attorney fees for the trial level proceedings. § 14–10–119. Moreover, we have answered the two legal questions on which certiorari was granted, and neither addresses attorney fees. Accordingly, we remand this case to the court of appeals with directions to remand to the trial court for resolution of the attorney fees and costs issue, provided, of course, that either party desires to renew their claim for appellate fees and costs.

## V. Conclusion

Respondent's promise in the 1984 separation agreement to pay his daughter's postsecondary education expenses is neither nonmodifiable nor enforceable as a contract term. It was adopted by the trial court and incorporated into the decree of dissolution. As a result, the trial court retained continuing jurisdiction to modify its orders concerning Alexandra, including Respondent's postsecondary education support obligation.

Subsection 14–10–115(1.5)(c.5) of the child support guidelines statute does not divest the trial court of this authority, and its order concluding otherwise was erroneous.

Even so, Respondent only invokes the trial court's continuing jurisdiction upon a showing of substantial and continuing changed circumstances. Excluding a few specifically delineated situations that are inapplicable here, nothing in the plain language of subsections 14–10–115(1.5)(c), (c.5) and 14–10–122(4) alters this clear, unambiguous requirement. The General Assembly did not express an intent that its enactment of amendments to the postsecondary education support scheme alone automatically triggers a court's continuing jurisdiction to modify child support orders. In holding otherwise, the court of appeals erred.

The judgment of the court of appeals is affirmed in part and reversed in part, and the case is remanded for proceedings consistent with this opinion.

Justice BENDER does not participate.