The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
October 15, 2020

**2020COA147**

**No. 20CA0965, *Trudgian v. LM General Insurance Company* — Insurance — Motor Vehicles — Claims Practices for Property Damage; Regulation of Vehicles and Traffic — Registration Upon Transfer**

In this C.A.R. 4.2 interlocutory appeal, the division analyzes the intersection of section 10-4-639(1), C.R.S. 2019, which states that insurers must pay an insured registration fees "associated with the total loss of a motor vehicle," with section 42-3-115(1), C.R.S. 2018, which states that a vehicle's owner may receive credit for registration fees from the Division of Motor Vehicles for a cancelled registration.  The insurer asserts that, when read together, the two statutes authorize it to wait to see if the owner will receive a credit before it is required to pay the insured the registration fees.  The division disagrees and concludes that the insurer is required to pay the registration fees.

COLORADO COURT OF APPEALS                                  2020COA147

---

Court of Appeals No. 20CA965
City and County of Denver District Court No. 19CV30732
Honorable Martin F. Egelhoff, Judge

---

Barbara Trudgian,

Plaintiff-Appellee,

v.

LM General Insurance Company,

Defendant-Appellant.

---

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by CHIEF JUDGE BERNARD
Tow and Hawthorne*, JJ., concur

Announced October 15, 2020

---

Franklin D. Azar & Associates, P.C., Michael D. Murphy, Alexander Beale, Aurora, Colorado, for Plaintiff-Appellee

Lewis Roca Rothgerber Christie LLP, Holly C. White, Lindsey C. Herzog, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2019.

¶ 1    As is pertinent to this C.A.R. 4.2 interlocutory appeal, section 10-4-639(1), C.R.S. 2019, states that an insurer "shall" pay registration fees when they are "associated with the total loss of a motor vehicle."  To resolve this appeal, we must decide whether an insurer is required to pay an insured such registration fees even though the insured might get a credit from the Department of Motor Vehicles, which we shall call "the department," for the same fees when the insured registers a replacement vehicle.  We conclude that the insurer is required to pay the registration fees.

## I.  Background

¶ 2    The named plaintiff in this putative class action, Barbara Trudgian, whom we shall call "the insured," bought auto insurance from defendant, LM General Insurance Company, which we will call "the insurer."  She paid registration fees for the vehicle, which was later damaged in an accident.

¶ 3    The insurer decided that the vehicle was a total loss, so it gave the insured an itemized settlement statement.  But the insured thinks that the insurer violated section 10-4-639(1) because (1) the settlement statement did not include reimbursement for any registration fees that she had paid for the vehicle for the period

1

following the accident; and (2) the insurer has never reimbursed her for those fees.

¶ 4    So the insured filed this lawsuit, which includes claims for statutory bad faith, common law bad faith, breach of contract, and a request for a declaratory judgment.  Relying on C.R.C.P. 56(h), the insurer filed a motion asking the trial court to decide, as a matter of law, that section 10-4-639(1) does not require it to reimburse the insured for any credit that the department gave or would give the insured for registration fees that the insured had paid on the vehicle during the period after the time of the accident.

¶ 5    The court disagreed with the insurer, concluding that section 10-4-639(1) "[u]nambiguously states that an insurer 'shall' pay registration fees" associated with the total loss of a vehicle and that this statute does not contain any "exception [to] or limitation on the insurer's statutory duty."  The court explained that the insured's contention that its duty to pay is "conditioned upon whether or not a discretionary credit is applied or 'will be applied' at some point in the future" is both "inconsistent with the mandatory duty" established by section 10-4-639(1) and "in conflict with" the

insurer's "overarching obligation to pay claims in a reasonable time."

¶ 6     The court later certified its order for interlocutory appeal under C.A.R. 4.2.  We granted the petition because we concluded that it meets the requirements for an interlocutory appeal.  We now affirm the court's order.

## II.  Standard of Review and Principles of Statutory Interpretation

¶ 7     This appeal requires us to interpret statutes.  We review such issues de novo.  *People v. Ortiz*, 2016 COA 58, ¶ 15.

¶ 8     When we interpret a statute, we must ascertain and give effect to the legislature's intent.  *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 16.  In doing so, "[w]e give effect to words and phrases according to their plain and ordinary meaning[s]."  *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011).

¶ 9     If a statute's language is clear, we apply it as the legislature wrote it.  *Id.*  "[W]e will not interpret a statute to mean that which it does not express."  *Carruthers v. Carrier Access Corp.*, 251 P.3d 1199, 1204 (Colo. App. 2010).

## III. Analysis

¶ 10     There are two statutes at the core of this case. The first is section 10-4-639(1), which states that "[a]n insurer shall pay . . . any . . . registration fee associated with the total loss of a motor vehicle." The second is section 42-3-115(1), C.R.S. 2018, which, at the time of the accident, specified that

- a vehicle's owner, when "applying for registration in such owner's name during the same registration period of another motor vehicle";

- "*may* receive credit upon fees due for such new registration for such portion of the fees paid for the cancelled registration" (emphasis added);

- "as the department may determine to be proper and proportionate to the unexpired part of the original term of registration."

¶ 11     According to the insurer, section 10-4-639(1) does not require it to reimburse the insured for registration fees that the department has or will credit to her under section 42-3-115(1), C.R.S. 2018. As a result, the insurer continues, it cannot "calculate what amount of money, if any, it owes to an insured for the loss . . . of . . . [the]

registration fees" until the insured tells the insurer one of two things: (1) she will not be registering a replacement vehicle, meaning that she will not receive a credit from the department; or (2) she has received a credit from the department and tells the insurer how much it was. But, whether we read these two statutes separately or together, we conclude that they do not say what the insurer contends that they say.

¶ 12    Beginning with the plain language of section 10-4-639(1), the use of the word "shall" requires the insurer to reimburse the insured for the registration fee associated with the total loss of a vehicle. *See People v. Dist. Court*, 713 P.2d 918, 921 (Colo. 1986)("[T]he use of the word 'shall' in a statute is usually deemed to involve a mandatory connotation."). "[A]ssociated" means "related, connected, or combined together." *Merriam-Webster Dictionary*, https://perma.cc/99DL-X4LB. Giving these terms their ordinary meanings, section 10-4-639(1) requires an insurer to reimburse an insured for the registration fee if it is connected to the total loss of a vehicle. In other words, just like a totaled vehicle is a loss to the insured, the associated registration fee is likewise a loss.

¶ 13    Contrary to the insurer's contention, nothing in section 10-4-639(1) creates an exception to this obligation.  The statute does not contain an exception, and we eschew creating one out of thin air because "an exception not expressly made by the legislature should not be read into a statute by the courts."  *Dikeou v. Dikeou*, 928 P.2d 1286, 1293 n.4 (Colo. 1996); *see In re Marriage of Chalat*, 112 P.3d 47, 57 (Colo. 2005)("Straining the statute to read otherwise would ignore its plain language . . . and read in a judicially created exception that the General Assembly did not include.").  And section 42-3-115(1), C.R.S. 2018, does not refer to any such exception for insurers, either.

¶ 14    Even so, the insurer submits that, by not creating an exception to its obligation to pay the insured's registration fee under section 10-4-639(1), the insured, and any other similarly situated insureds, might receive a windfall allowing them to collect twice: once from the insurer under section 10-4-639(1), and once in the form of a credit from the department under section 42-3-115(1), C.R.S. 2018.  We disagree for five reasons.

¶ 15    First, unlike an insurer's obligation to pay registration fees in section 10-4-639(1), the credit provided in section 42-3-115(1),

6

C.R.S. 2018, is not mandatory. "The owner . . . *may* receive credit upon the fees due for such new registration for such portion of the fees paid for the cancelled registration as the department *may* determine to be proper and proportionate to the unexpired part of the original term of registration." § 42-3-115(1), C.R.S. 2018 (emphasis added). *See Larry H. Miller Corp. Denver v. Urban Drainage & Flood Control Dist.*, 64 P.3d 941, 946 (Colo. App. 2003)("[T]he General Assembly's use of the term 'may' is indicative of a discretionary power to choose among alternatives."); *see also People v. Kilgore*, 992 P.2d 661, 663 (Colo. App. 1999)("While [the term 'may'] can, in some instances, bear a mandatory meaning . . . it is generally deemed to carry a permissive connotation, absent evidence of a contrary legislative intent."). Providing an exception to an insurer's mandatory obligation based on a discretionary credit would be contrary to the ordinary meaning of these statutes.

¶ 16     Second, in construing a statute's ordinary meaning, we read the statutory scheme as a whole to "give consistent, harmonious, and sensible effect to all parts of [the] statute." *Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 935 (Colo. 2010). Title 10 applies to all types of insurance. Section 10-4-639(1) is part of

Article 4, which deals with "Property and Casualty Insurance." By enacting Article 4, the General Assembly declared "that the health, welfare, and safety of the people of the state of Colorado would be enhanced by the expeditious handling of liability claims." § 10-4-101, C.R.S. 2019; *see* § 10-3-1115(1)(a), C.R.S. 2019 (An insurer "shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant."). Interpreting section 10-4-639(1) as the insurer suggests we should interpret it is contrary to this statutory scheme because it puts the burden on the insured to provide information based on an uncertain event — buying and registering a new vehicle — before she can be compensated for the total loss of her covered vehicle.

¶ 17 Third, and relatedly, forcing the insured to wait to receive the reimbursement for the registration fees until she has either decided against registering a replacement vehicle or decided to register one and the department has given her a credit would unnecessarily delay the payment of her claim, undercutting the legislature's direction that such claims be resolved expeditiously. *See* § 10-3-1115(1)(a); § 10-4-101.

¶ 18 Fourth, the insured is only seeking registration fees for the period when she was unable to use her vehicle after the accident because of the total loss. She would not be in the position of needing a replacement vehicle — and paying additional registration fees — if her insured vehicle had not been a total loss. *See State, Dep't of Health v. The Mill*, 887 P.2d 993, 1005 (Colo. 1994)("A 'windfall' is commonly understood to mean 'an unexpected or sudden gain or advantage.'" (quoting Webster's Third New International Dictionary 2619-20 (1986))).

¶ 19 Fifth, "[i]t is not within the purview of this court to question the legislature's choice of policy," even if that policy results in a windfall to insureds. *City of Montrose v. Pub. Utils. Comm'n*, 732 P.2d 1181, 1193 (Colo. 1987); *see Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080, 1088 (Colo. 2010)(The legislature "chose to allow a plaintiff to obtain the benefit of his contract, even if the award resulted in a double recovery."); *see also Colo. Ins. Guar. Ass'n v. Menor*, 166 P.3d 205, 217 (Colo. App. 2007)("[T]he General Assembly has not amended § 8-41-203 to preclude such windfalls.").

¶ 20    The insurer points to the legislature's recent repeal of section 42-3-115(1), C.R.S. 2018, and to its related enactment of section 42-3-107(25), C.R.S. 2019 (effective January 1, 2020), to buttress its contention. *See* Ch. 231, sec. 2, § 42-3-115, 2019 Colo. Sess. Laws 2319.  Section 42-3-107(25) now provides that the "department *shall* allow a credit for . . . registration fees . . . if the owner disposes of the vehicle during the registration period . . . ." (Emphasis added.)  The insurer asserts that, because the legislature did not modify section 10-4-639(1) when enacting section 42-3-107(25), section 10-4-639(1) cannot be interpreted to require insurers to pay registration fees that the department now must credit to insureds.

¶ 21    But that is not what the 2019 statutory changes say.  They did not expressly create an exception to the insurer's duty to reimburse the insured for registration fees under section 10-4-639(1), and we cannot create one out of whole cloth.  *See Dikeou*, 928 P.2d at 1293 n.4.  And, as our supreme court has explained, the legislature "that amended the statute is not the same [legislature] that enacted the statute that we construe here."  *State v. Nieto*, 993 P.2d 493, 504 n.6 (Colo. 2000).  We cannot infer the intent of the predecessor

legislature that enacted section 10-4-639(1) from the act of the successor legislature that enacted section 42-3-107(25). *Id.*

¶ 22 Finally, the insurer submits that the United States District Court's decision in *Monson v. Country Preferred Insurance Company*, No. 17-CV-02130-RBJ, 2018 WL 11016704 (D. Colo. Sept. 28, 2018), supports its interpretation. In *Monson*, as in this case, the plaintiff claimed that an insurance company did not reimburse its insured for registration fees under section 10-4-639(1). *Id.* at *2. The insurer relies on the district court's statement that a credit from the department "may be relevant in determining the amount of fees owed" by the insurer. *Id.* at *4. But this statement was made in the context of discussing *all* the fees that the plaintiff sought from the insurance company: "the total amount of fees related to the replacement vehicle, minus a . . . credit" from the department. *Id.* at *3. The insured in this case did not seek such additional fees.

¶ 23 More to the point, *Monson* held that section 10-4-639(1) "mandates the insurance provider to pay . . . registration fee[s] associated with a total loss." *Id.* at *4. It decided, like we do, that "a discretionary credit from the [department] does not relieve insurance providers of their statutory duties as a matter of law." *Id.*

11

¶ 24    In the end, we conclude that section 10-4-639(1) means exactly what it says: the insurer must pay registration fees associated with the total loss of the insured's vehicle.

¶ 25    The trial court's order is affirmed, and we remand the case for further proceedings.

JUDGE TOW and JUDGE HAWTHORNE concur.