No. 12,468.

ESTATE OF DUNCAN.

POPHAM *v.* DUNCAN.

(285 Pac. 757)

Decided February 24, 1930.

Mr. Harold E. Popham, pro se.

Mr. Lewis deR. Mowry, Mr. Robert D. Charlton, for defendant in error.

*In Department.*

Mr. Chief Justice Whitford delivered the opinion of the court.

Charles M. Duncan died intestate. The defendant in error, his third wife, survived him. The plaintiff in error was appointed administrator of his estate. The widow petitioned the court for an order requiring the administrator to pay her the widow's allowance under the statute. The administrator resisted her petition, and set up an antenuptial contract as a bar to the claim for an allowance. The alleged antenuptial contract is as follows:

"This agreement made and entered into this sixteenth day of December, 1924, between Charles M. Duncan, physician, party of the first part, and Mrs. Hattie E. Gibson, party of the second part, Witnesseth, that the said parties hereby mutually agree, that in the event of legally entering into a state of matrimony and living together as man and wife, it is the intention that such relationship shall be continued in to the satisfaction of both parties, and to their mutual happiness. This agreement further witnesseth, that should at any time a condition exist that would disturb the harmony of the married life and domestic relations of said parties, they agree to a legal separation, with the following stipulations: The party of the first part agrees to make a settlement with the party of the second part at the rate of $100.00 for each year they shall have lived together as man and wife, the said settlement to be paid in the lawful money of the

United States of America, or its equivalent. The said party of the second part agrees to accept said settlement within 24 hours of the time the said parties shall have ceased to live together as man and wife. The said party of the second part further agrees to vacate the house, rooms or premises the said parties shall have occupied, and to take from said house, rooms or premises all articles of household goods, furnishings, and wearing apparel which are her personal property, within 24 hours of receiving the foregoing settlement, and with no expense to the said party of the first part. In consideration of the foregoing, the party of the second part does hereby further agree to forever release the said party of the first part, his heirs and assigns, from any and all claims for alimony, support, maintenance, dower, or wife's or widow's rights; and not to contest any action for divorce that may be brought by the party of the first part.''

In less than one year thereafter the parties separated, following which the wife signed a receipt, which is as follows, to-wit:

''I hereby acknowledge the receipt of the sum of $110.00, in full settlement of all claims I have against C. M. Duncan, by or on account of our marriage relations, which have been mutually discontinued, or any claim for alimony or support from and after this date.''

The county court denied the widow's claim for an allowance. On trial de novo in the district court, on appeal, that court held the antenuptial agreement void, and entered judgment in favor of the widow. To reverse that judgment the administrator comes here on error.

The judgment of the district court must be affirmed. The contract provides for a future separation and divorce. The receipt was given in pursuance of that contract. They will be taken and considered together.

██ ██ The antenuptial contract was a wicked device to evade the laws applicable to marriage relations, property rights, and divorces, and is clearly against public policy and decency. It was nothing more, in effect, than

an attempt, on the part of the deceased, in whose favor the contract was drawn, to legalize prostitution, under the name of marriage, at the price of $100 per year. It was the establishing of a companionate marriage, to exist only so long as neither party objected to a continuance. The wife, under its terms, was made a base hireling. The man could enjoy her companionship, under its covenant, for a single night, and then discard her, or he might continue his companionship with her for a week, or a fortnight, or longer if it pleased his fancy, and then he could, under its terms, capriciously and arbitrarily reject her, and put her adrift by paying the price, at the rate of $100 per year; and thereupon, at his bidding, she must gather up her personal belongings and leave the house within 24 hours, without any rights, either as wife or widow, and then, as a finale, she would be obliged silently to submit to his action of divorce, without a right to contest the same in court, no matter how vile, false, or unjust the charges made against her reputation or character.

The contract is void. It is against public policy. The marriage relation lies at the foundation of our civilization. Marriage promotes public and private morals, and advances the well-being of society and social order. The marriage relation is so sacred in character that it is indissoluble except in conformity with legislative requirements and the solemn decree of a court. It cannot be annulled by contract, or at the pleasure of the parties.

The judgment is affirmed.

Mr. Justice Adams, Mr. Justice Campbell and Mr. Justice Alter concur.