CARL K. ANCRUM, petitioner,

*v.*

EVELYN E. ANCRUM, defendant.

[Decided June 9th, 1931.]

*Messrs. Sandmeyer & Meisner,* for the petitioner.

*Mr. Charles Becker,* for the defendant.

NEWMAN, A. M.

The petition in this case is filed to declare a marriage null and void on the ground that the defendant at the time of her marriage to the petitioner was already married to one Isaac Journeyman, who at the time of the petitioner's marriage to the defendant, was living, and from whom the defendant had not been divorced. It appears from the evidence that on the 24th day of July, 1925, a marriage ceremony between the petitioner and the defendant was performed and that the petitioner did not then know that the defendant had a husband living from whom she had not been divorced.

If these facts standing alone were proved, I would have to advise a decree in accordance with the prayer of the petition. *Tyll* v. *Keller,* 94 *N. J. Eq. 426; Vanaman* v. *Vanaman,* 103 *N. J. Eq. 400.* But it appears by very clear and convinc-

ing evidence that sometime during the year 1927 the petitioner learned of the fact of the prior marriage of the defendant to one Isaac Journeyman; that he made an investigation of the facts and satisfied himself of the invalidity of his marriage to the defendant and discussed the matter with Isaac Journeyman, who informed him of the prior marriage and gave him the place, date and circumstances connected therewith. Upon learning these facts, the petitioner, after going to New Haven to procure the record of the prior marriage, then separated himself from the defendant for a period of about one month, but in the same year, 1927, he resumed marital relations with the defendant and continued to live with her "on and off," to use his own expression, until 1930, when the defendant started proceedings against him for non-support and he then separated himself from her and commenced these proceedings to annual the marriage.

The petitioner asserts that his reason, or rather excuse, for resuming marital relations with the defendant and continuing them for a period of three years, which of course were adulterous and criminal under the conditions then existing, was the fact that the defendant informed him that her marriage to Isaac Journeyman was invalid since Isaac Journeyman had another wife living at the time of his marriage to the defendant, and that she, the defendant, desired to submit proof of this fact to the petitioner. Upon her assertions and assurance that she would submit such proof (although this is emphatically denied by the defendant) the petitioner continued to live with her in this illegal and improper relationship for a period of nearly three years. I place very little credence upon this testimony respecting his reason for continuing this improper relationship.

Counsel for the defendant interposes a defense that amounts to a condonation. I might say here that the doctrine of condonation can have no application to this case as forgiveness cannot validate an illegal marriage. *Millar* v. *Millar* (*Cal.*), *167 Pac. Rep. 394; L. R. A. 1918-B 415.*

However, I am confronted with this question:

Is the statute conferring upon the petitioner the right to the relief sought as a matter of strict legal right, mandatory, or may the court in the exercise of its equitable powers, inquire into the circumstances and deny the petitioner a decree where the petitioner does not come into court with clean hands?

I have spent considerable time trying to reconcile whether or not the doctrine of *pari delicto* or the equitable maxim "he who comes into equity must come with clean hands," applies in annulment cases. This is because public policy is involved and the state is an interested party to litigation of this character. I have been referred to the case of *Davis* v. *Green, 91 N. J. Eq. 17,* which in effect holds that these doctrines do not apply in annulment cases of this kind. However, the court of appeals later in the case of *Tyll* v. *Keller, supra,* and *Dolan* v. *Wagner, 95 N. J. Eq. 1,* hold to the contrary, as did Vice-Chancellor Backes in the case of *Schaffer* v. *Krestovnikow, 88 N. J. Eq. 192.*

It is also argued that the maxim of unclean hands was not urged by the defendant. In the case of *Pennello* v. *Pennello, 97 N. J. Eq. 421,* Vice-Chancellor Buchanan states:

"The maxim of unclean hands and the maxim cognate thereto are applicable to and may be invoked by the court *sua sponte* in suits for annulment upon whatever ground brought. But the maxim of unclean hands is one not capable of exact delimitation. Ordinarily, at least, to justify or necessitate its application, some element of moral turpitude on the part of the suitor must appear."

The question whether the court may invoke the maxim of unclean hands on its own motion is discussed in *4 A. L. R. 47.*

It is also urged that to refuse a decree of annulment would be tantamount to recognizing the possibility of a person having two legal wives or two legal husbands at the same time. May not equitable considerations be presented which would require the court in the interest of decency and fair dealing, to deny a party the relief of a decree of annulment? In the case now under consideration the petitioner and the defend-

ant were married on July 2d, 1925, and lived together as man and wife until the year 1927, at which time the petitioner learned that the defendant had another husband living. He had made an investigation and found that to be the fact and yet he continued to live with the defendant as man and wife up to the time the defendant brought maintenance proceedings against him in 1930.

In the case *sub judice* it appears that for nearly three years after knowledge of the facts had come to him, the petitioner and the defendant continued to sustain toward each other the relationship of husband and wife. It would seem that when the petitioner became apprised of the fact that the defendant's husband was alive, and having reasonable opportunity to investigate the facts and circumstances, of all of which he availed himself, he was called upon to act, and to act with reasonable promptitude and expedition. He should then without unnecessary delay have decided upon the course to be pursued. The petitioner was not at liberty to play fast and loose with the defendant and by his conduct sanction and approve a marriage which he knew to be illegal. It was not only unconscionable but criminal for him to continue to cohabit with her with knowledge of the prior marriage and then at a later day repudiate the relationship and bring this action to annul the marriage. His conduct was such as appears to me as worthy of condemnation and I am therefore constrained to deny him the relief prayed for.

I might also add that in the case of *Schaffer* v. *Kreslovnikow, supra,* a case similar to the one under consideration, Vice-Chancellor Backes said:

"Then, too, as far as respects relief to the petitioner, the doctrine of unclean hands would bar him if we looked upon the cohabitation as continuously criminal."

Counsel for the petitioner has called to my attention the case of *Stokes* v. *Stokes, 113 N. Y. Supp. 142,* which was later reversed and a new trial ordered by the court of appeals in *198 N. Y. 301.* Upon examination of this case I find that the court of appeals reversed the lower court because of the

fact that the findings of the lower court were so inconsistent that it was impossible to harmonize them. However, the court states, "while it may be well that there are extreme cases where the position of the party seeking relief of the kind sought here, is so inequitable that a court of equity will refuse to interfere, no such defense was pleaded or sufficiently proved in the case before us."

As I have concluded to dismiss the proceedings I shall not comment but merely refer to the fact that this cause is not properly entitled within the rule laid down in the case of *Dooley* v. *Dooley, 93 N. J. Eq. 22.*

I shall, therefore, deny the relief requested in the petition, and dismiss the proceedings.