No. 15,888.

OTTE *v.* PIERCE.
(194 P. [2d] 331)

Decided April 19, 1948.   Rehearing denied June 7, 1948.

Mr. JOHN T. DUGAN, for plaintiff in error.

Mr. EDWARD H. SHERMAN, for defendant in error.

*En Banc.*

MR. JUSTICE HAYS delivered the opinion of the court.

DEFENDANT in error, Alvia Leroy Pierce, plaintiff below, brought this action against plaintiff in error, Florence Mildred Otte, to annul a purported marriage between the parties performed August 2, 1939, upon the alleged ground that defendant had a husband living at the time of said marriage from whom she was not divorced. Defendant in her answer admitted her marriage to plaintiff, but denied that she had a husband at the time of said marriage, and filed a cross complaint for separate maintenance.

In support of his allegations, plaintiff testified that defendant, prior to their marriage, had told him that she was previously married to Paul Otte and that she had secured a divorce from him. Defendant testified that she was never married to Otte; that she never told plaintiff she had been; and that she was free, August 2, 1939, to marry plaintiff. The issues were submitted to a jury, acting in an advisory capacity, which found in favor of plaintiff and against defendant. The court adopted the findings of the jury and entered judgment thereon for annulment in favor of plaintiff. Since the verdict of annulment was returned it was unnecessary for the jury to pass upon the question of separate maintenance under court's instructions. The judgment is now here for review on writ of error.

This case is here for the fourth time, the previous opinions being in *Pierce v. Otte,* 111 Colo. 374, 142 P.

(2d) 283; Otte v. Pierce, 111 Colo. 386, 142 P. (2d) 280; Otte v. Pierce, 116 Colo. 77, 178 P. (2d) 676. This opinion should be considered in connection with the above decisions.

There are nine separate specifications upon which plaintiff in error relies for a reversal of the judgment. We elect to dispose of the case upon the point that the trial court erred in entering judgment for plaintiff and against defendant.

The facts necessary for a proper understanding of this opinion are: That plaintiff and defendant were ceremoniously married August 2, 1939, and at all times thereafter and until July 8, 1941, lived together as husband and wife; that on September 4, 1940, defendant, under the name of Florence Ottie, brought suit for divorce against Paul Ottie, No. A-28588, in the Denver district court, and an interlocutory decree was entered January 9, 1941, the decree becoming final July 10, 1941. The evidence was conflicting as to defendant's motive in instituting the divorce action against Otte, but in view of our disposition of the case, the reason therefor is immaterial. It is sufficient, for the purposes of this review, to state that plaintiff testified he learned January 9, 1941, for the first time, that defendant was not divorced from Otte, when he saw the notice of the granting of the interlocutory decree in " Ottie v. Ottie," in a newspaper. Plaintiff contends that he entered into the alleged marriage unaware of the willful concealment by defendant of the fact that she was not divorced, and that by reason of such deception, is entitled to an annulment of the marriage. While the record herein furnishes ample grounds for questioning whether plaintiff was an innocent participant in the alleged illegal marriage, from its inception to January 9, 1941, he freely admits that he continued to cohabit with defendant after that date and until July 8, 1941, a period of six months after he had acquired full knowledge concerning defendant's true marital status, the last date

being two days prior to the judicial removal of the alleged impediment of the previous marriage.

Upon the alleged discovery by plaintiff that defendant was still married to Otte, it was his duty to separate from defendant and maintain such separation until the impediment was removed. The continued cohabitation for a period of six months after full knowledge of all the facts, was illegal, meretricious, inconsistent with plaintiff's claim of innocence, and contrary to his testimony that he was "grieved and broken up" when he learned that defendant had not secured a divorce from her former husband. The fact that plaintiff herein elected to sue for annulment, and not for divorce, two days before the decree in "Ottie v. Ottie" became final, in the light of all the attending circumstances, lends some credence to the suggestion that he did so in bad faith, to escape payment of alimony and to avoid a property settlement.

█ Under the above circumstances plaintiff is not entitled to a rescission of the marriage contract and is "precluded from obtaining such an annulment, on the theory that he * * * does not come into court with clean hands." 35 Am. Jur., p. 276, §155; Annotations, 54 A.L.R. 83, 84.

A case arose in New Jersey involving almost identical facts to those in the instant proceeding. The court of chancery of New Jersey, in denying plaintiff's right to an annulment upon the ground that he did not come into court with clean hands, after discussing many cases, said in *Ancrum v. Ancrum,* 9 N.J. Misc. 795, 156 Atl. 22:

"In the case now under consideration the petitioner and the defendant were married on July 2d, 1925, and lived together as man and wife until the year 1927, at which time the petitioner learned that the defendant had another husband living. He had made an investigation and found that to be the fact, and yet he continued to live with the defendant as man and wife up to the

time the defendant brought maintenance proceedings against him in 1930.

"In the case sub judice it appears that for nearly three years after knowledge of the facts had come to him, the petitioner and the defendant continued to sustain toward each other the relationship of husband and wife. It would seem that when the petitioner became apprised of the fact that the defendant's husband was alive, and having reasonable opportunity to investigate the facts and circumstances, of all of which he availed himself, he was called upon to act, and to act with reasonable promptitude and expedition. He should then without unnecessary delay have decided upon the course to be pursued. The petitioner was not at liberty to play fast and loose with the defendant and by his conduct sanction and approve a marriage which he knew to be illegal. It was not only unconscionable but criminal for him to continue to cohabit with her with knowledge of the prior marriage and then at a later day repudiate the relationship and bring this action to annul the marriage. His conduct was such as appears to me as worthy of condemnation and I am therefore constrained to deny him the relief prayed for."

The case of *Popham v. Duncan,* 87 Colo. 149, 285 Pac. 757, 70 A.L.R. 824, involved an antenuptial contract between C. M. Duncan and Hattie Duncan, his wife, by which it was agreed that their marriage, if consummated, should continue only so long as the same should be mutually satisfactory, and that in the event of disagreement, Mrs. Duncan promised to vacate the home and take therefrom her personal property within twenty-four hours, thereby releasing her husband and his heirs from all claims, including alimony, and she also agreed not to contest any action for divorce which might be brought by Duncan, and in the event he instituted such an action he agreed to pay her the sum of one hundred dollars for each year that they lived together as man

and wife. The district court held the contract void, and in affirming its ruling, we said:

"The antenuptial contract was a wicked device to evade the laws applicable to marriage relations, property rights, and divorces, and is clearly against public policy and decency. It was nothing more, in effect, than an attempt, on the part of the deceased, in whose favor the contract was drawn, to legalize prostitution, under the name of marriage, at the price of one hundred dollars per year. It was the establishing of a companionate marriage, to exist only so long as neither party objected to a continuance. The wife, under its terms, was made a base hireling. The man could enjoy her companionship, under its covenant, for a single night, and then discard her, or he might continue his companionship with her for a week, or a fortnight, or longer if it pleased his fancy, and then he could, under its terms, capriciously and arbitrarily reject her, and put her adrift by paying the price at the rate of one hundred dollars per year; and thereupon, at his bidding, she must gather up her personal belongings and leave the house within twenty-four hours, without any rights, either as wife or widow, and then, as a finale, she would be obligated silently to submit to his action of divorce, without a right to contest the same in court, no matter how vile, false, or unjust the charges made against her reputation or character.

"The contract is void. It is against public policy. The marriage relation lies at the foundation of our civilization. Marriage promotes public and private morals, and advances the well-being of society and social order. The marriage relation is so sacred in character that it is indissoluble except in conformity with legislative requirements and the solemn decree of a court. It cannot be annulled by contract, or at the pleasure of the parties."

What was said in the Duncan case applies with equal force here. The only practical difference between the cases is that there was a contract in the Duncan case and none here. Plaintiff here is attempting without any

agreement, and without price, what Duncan tried to do pursuant to an illegal and void contract. We emphatically declared in the above case that the marriage relationship "cannot be annulled by contract, or at the pleasure of the parties." It naturally follows that such relationship cannot be annulled at the pleasure of one of the parties.

Plaintiff contends that notwithstanding the illegal cohabitation, and irrespective of the judicially declared public policy of this state, he may, at his pleasure, sever the marriage relationship, eject defendant from their home, make no accounting as to community property which may have accumulated, avoid payment of alimony, and be instantly free to assume marriage relations with another wife; all this he seeks to do with the aid of a court of equity. If such conduct—as we have said—is against public policy and insufficient to constitute a valid consideration in a contract, it cannot be made the basis of a suit in equity to annual the marriage, and is illegal, whether carried on pursuant to, or in the absence of, a contract.

In *Potter v. Swinehart*, 117 Colo. 23, 184 P. (2d) 149, are cited many cases similar to the instant one, wherein we refused to lend our aid "to enforce contracts which strike down its laws and corrupt its people," or to "act as referee to divide the loot, nor attempt to do equity between the enemies of society," or protect "those who propose to violate law, or for the indemnification of those injured by deliberately and intentionally violating the law," or "to aid a man who founds his cause of action upon his own immoral or illegal act."

"The court's refusal [to aid a wrongdoer] is not for the sake of the defendant, but because it will not aid such a plaintiff." Restatement of the Law—Contracts, §598, Comment a.

In *Baker v. Couch*, 74 Colo. 380, 221 Pac. 1089, cited in the last above mentioned case, plaintiff sought to cancel a contract wherein the consideration was based

upon "past, present, and future illicit relations between the parties," and we held that "under such circumstances no recovery could be had." In connection therewith we said: "It is unnecessary in this jurisdiction, that such a condition of affairs be pleaded. Where the contract or transaction in question is illegal, fraudulent or immoral and there is mutual misconduct of the parties with respect thereto, neither law nor equity will aid either to enforce, revoke or rescind. To such disputes the courts will not listen and the parties thereto they will leave in the exact position in which they have placed themselves. It is immaterial whether information of such illegality comes from plaintiff or defendant, or is disclosed by pleadings or evidence."

Under similar circumstances, in *Roberts v. Roberts,* 113 Colo. 425, 158 P. (2d) 184, we said: "If plaintiff's allegations are true, taken in connection with his testimony in the divorce action, it would establish a conspiracy between plaintiff and defendant to defraud plaintiff's wife of alimony and support money, and, under these circumstances, plaintiff is in no position to seek equitable relief."

In the very recent case of *Isaak v. Perry,* 118 Colo. 93, 193 P. (2d) 269, in adhering to the above rule we stated: "Of transactions contrary to the declared public policy of the state the court will take no notice."

In the light of the above decisions, plaintiff's admitted cohabitation with defendant for a period of six months, during which time defendant's action for divorce from her previous husband was pending, and with full knowledge of the fact that defendant was not divorced, was unlawful, and by reason thereof, plaintiff is not entitled to relief in equity by the annulment of the marriage.

■ There is still another reason why plaintiff is not entitled to an equitable decree of annulment. In order to maintain such an action it was necessary for him to allege and prove that he did not have a plain, speedy, or adequate remedy at law. He has done neither.

Section 1, article 1, chapter 56, '35 C.S.A., provides: "Any marriage may be dissolved and a divorce granted for any one or more of the following named reasons, and for no other cause, to wit: * * * Second, That the spouse from whom a divorce is sought had a husband or wife living, and not divorced, at the time of the marriage."

Article 2, id., provides: "§33. All marriages wherein either party is under the age of eighteen years, are hereby declared to be voidable. §34. Actions for annulment may be maintained upon the following grounds: (a) Upon the ground set forth in the preceding section hereof, providing the party seeking such annulment is under the age of nineteen years at the time of the institution of the suit. (b) In such other cases as are recognized in equity."

An attempt was made in *Williams v. Williams*, 83 Colo. 180, 263 Pac. 725, 57 A.L.R. 127, to have the marriage between Benjamin M. Williams, deceased, plaintiff's uncle, and defendant Elizabeth Jane Williams, annulled upon the ground that said defendant was incapable of entering into the marriage contract. Defendant's demurrer to the amended complaint was sustained in part, and plaintiff elected to stand upon his amended complaint. We held, inter alia, that plaintiff could not maintain the action for annulment because he had a plain, speedy and adequate remedy at law in a proceeding for determination of heirship. "Stated negatively, if the law affords a remedy which is adequate, the cause may not, according to the great weight of authority, be made the basis of a suit in equity." 19 Am. Jur., p. 109, §101.

Plaintiff in the instant case, as appears above, has a statutory remedy in divorce, which is in all respects adequate. He has neither alleged nor attempted to prove, that he is without an adequate remedy at law and, as stated in *Williams v. Williams, supra,* "we may well

leave the plaintiff to the remedy afforded him by statute."

█ In case there should be further proceedings between the parties for divorce or separate maintenance, it is pertinent here to observe as indicated in *Pierce v. Otte, supra,* that repeated references to the defendant in the trial court as "Mrs. Otte" or "Florence Otte" or in any manner other than "Pierce," was unfair, improper and probably prejudicial to her rights. Defendant's name is now and ever since August 2, 1939, has been "Pierce," and will so remain until her marriage is annulled or dissolved by proper decree of the court. The motion of the defendant to correct the pleadings and require plaintiff to refrain from referring to her as "Otte" should have been granted.

Accordingly, the judgment of the trial court is reversed and the cause remanded with instructions to dismiss plaintiff's complaint for annulment.

MR. JUSTICE STONE dissents.