34 N.J. Super. 146 (1955)
111 A.2d 638
HELEN MARY ENDRES, OTHERWISE KNOWN AS HELEN MARY GROVE, PLAINTIFF,
v.
DONALD G. GROVE, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided February 9, 1955.
*147 Mr. Joseph A. Citta (Mr. Jerome J. Doherty, of counsel), attorney for the plaintiff.
No appearance for the defendant.
CONFORD, J.S.C.
Plaintiff sues for annulment of the ceremonial marriage into which she entered with the defendant March 31, 1951 on the ground that he was then the husband of one Marion Grove by a prior marriage not then dissolved, and that plaintiff was ignorant of that fact at the time.
The defendant did in fact contract a ceremonial marriage with Marion A. Grove May 26, 1945 which subsisted until it was terminated by a judgment of divorce at the instance of the wife for desertion. The judgment nisi was entered April 30, 1952 and the final judgment on July 31, 1952. The action was instituted December 28, 1951. There were two children of this marriage and one of defendant's union with plaintiff, the latter born in August, 1951.
*148 Plaintiff cohabited with defendant continuously until February, 1953, when she says she left him because of his cruel and abusive treatment of her. The complaint in the present action was filed November 1, 1954.
The question posed upon the completion of the proofs is as to whether the equitable doctrine of unclean hands requires the disallowance of the relief here sought, either because of plaintiff's knowledge relative to defendant's marital antecedents at the time of the marriage here sought to be adjudged null, or on the basis of her continued cohabitation with him for sixteen months after admittedly learning of his disqualification for marriage.
Plaintiff asserts she had no actual guilty knowledge when she married defendant and that her cohabitation with him after learning the facts was motivated by defendant's promise to remarry her when he should obtain a final decree of divorce and by her solicitude for the welfare of her child. I have concluded that these purported grounds for avoidance of the application of the rule of unclean hands to her cause are not well founded either in fact or in law.
Whatever may be thought of the varying concepts of public policy, prior to 1923, as to the withholding of a judgment declaring the nullity of a marriage void ab initio, in circumstances like these, Davis v. Green, 91 N.J. Eq. 17, 19 (Ch. 1919), Freda v. Bergman, 77 N.J. Eq. 46, 48-50 (Ch. 1910), the rule is now firmly established that relief will not be granted where the claimant is shown to have known of the impediment when he entered into the marriage sought to be adjudged void. Tyll v. Keller, 94 N.J. Eq. 426 (E. & A. 1923); Smith v. Hrzich, 1 N.J. 1 (1948).
Both logic and the apparent trend of the authorities lead to the same result where the complaining party, though innocent at the outset, continues to cohabit with the defendant after learning of the illegality of the relationship. See Ancrum v. Ancrum, 9 N.J. Misc. 795 (Ch. 1931); Keller v. Linsenmyer, 101 N.J. Eq. 664 (Ch. 1927). The rule was restated that broadly by the Appellate Division of this court in Dacunzo v. Edgye, 33 N.J. Super. 504, where it was said:
*149 "The question which must concern us in determining whether plaintiff is guilty of inequitable conduct is: Did he go through a ceremonial marriage with defendant, or continue to live with her as man and wife, knowing or having reason to know of the existence of an impediment to lawful wedlock." (Emphasis added.)
Plaintiff testified that defendant's stepmother had, prior to February, 1951, mentioned defendant's wife and children to her but that she "let it pass. I didn't think anything of it"; that in February she asked defendant's father whether the son was married and was told he was not; that defendant himself told her the same thing; and that in November 1951, after marrying the defendant and being delivered of his child, she learned from her mother that the probation officer at Mt. Holly had phoned to say the defendant had been married. At about the same time plaintiff's father received the same information from the prosecutor of Burlington County. She says this was the first she knew of defendant's disability for a fact.
Plaintiff's older sister testified that prior to the marriage she and her mother, but not the plaintiff, had heard from a co-worker of defendant that he was married; that the sister and mother confronted defendant with the story and that he denied it. They also asked defendant whether he was going to marry plaintiff and he said he was. As plaintiff gave birth to a child less than five months after the marriage it is not unfair to assume that all three, plaintiff, her mother and sister, were probably more concerned with effecting a marriage between the parties than with defendant's legal capacity to contract one. The ceremony had the statutory effect of legitimating the offspring of the union, notwithstanding its inefficacy as a legal wedding of the parties. R.S. 9:15-2; N.J.S. 2A:34-20.
In this state of the proofs I cannot find that plaintiff has borne the burden she must carry to show herself innocent of guilty knowledge at the time of the marriage. Tyll v. Keller, supra.
But if there were any doubt on that score, it becomes academic in view of plaintiff's continuation in a meretricious *150 relationship with defendant after admittedly learning the facts. Her desire to preserve a home for the child is understandable but it does not, in my judgment, cleanse her hands of the effects of continuing her misalliance, particularly in the light of the fact that she made no apparent effort to induce the defendant to keep his alleged promise to remarry her after his disability was removed by divorce on July 31, 1952, six months before she left him.
The action will be ordered dismissed.