**In re the MARRIAGE OF Melodee IKELER, n/k/a Melodee Crawford, Petitioner**

**and**

**Douglas Eves Ikeler, Respondent.**

No. 06SC664.

Supreme Court of Colorado, En Banc.

June 25, 2007.

Willoughby & Eckelberry, L.L.C., John L. Eckelberry, Denver, Colorado, Attorneys for Petitioner.

Loper and Virnich, P.C., Sean H. Virnich, Amy Therese Loper, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

In this case, we address whether a court can review a waiver of attorney's fees in a valid marital agreement for unconscionability at the time of enforcement under the Colorado Marital Agreement Act ("CMAA"), sections 14–2–301 to –310, C.R.S. (2006).[1] We hold that a waiver of attorney's fees in a marital agreement is subject to review for unconscionability, and therefore we reverse the court of appeals.

## I. Facts and Procedural History

Melodee Ikeler ("Wife") and Douglas Ikeler ("Husband") were married on November 18, 2000. Wife gave birth to triplets on April 12, 2002. In 2004, Wife filed a Petition for Dissolution of Marriage. During the course of the dissolution proceedings, Wife filed a motion requesting an award of attorney's fees pursuant to section 14–10–119, C.R.S. (2006). Husband subsequently filed a motion for summary judgment on the issue of attorney's fees, citing a marital agreement the parties signed shortly before the marriage. Article IV of the marital agreement states in relevant part:

> The Parties recognize that under Colorado law a court could consider the award to either of them of spousal maintenance or alimony in the event of dissolution of marriage, divorce or legal separation. Both Parties are able to provide for their own support and both Parties hereby waive any right to receive spousal maintenance or alimony on either a temporary or permanent basis at any time in the future. The Parties also agree that each will pay their own attorneys fees in any dissolution or separation proceedings.

Wife did not dispute the validity of the marital agreement, but rather argued that the court could review the waiver of maintenance and attorney's fees for unconscionability at the time of dissolution. Husband agreed that under subsection 14–2–307(2), C.R.S. (2006),[2] the court could review the waiver of maintenance for unconscionability, but argued that there was no statutory basis for the court to review the waiver of attorney's fees. Subsection 14–2–307(2) provides that an otherwise enforceable marital agreement

---

1. We cite to the most recent edition of the Colorado Revised Statutes unless otherwise noted.

2. Subsection 14–2–307(2) states:
 A marital agreement or amendment thereto or revocation thereof that is otherwise enforceable after applying the provisions of subsection (1) of this section is nevertheless unenforceable insofar, but only insofar, as the provisions of such agreement, amendment, or revocation relate to the determination, modification, or elimination of spousal maintenance and such provisions are unconscionable at the time of enforcement of such provisions. The issue of unconscionability shall be decided by the court as a matter of law.

"is nevertheless unenforceable insofar, but only insofar, as the provisions of such agreement ... relate to the determination, modification, or elimination of spousal maintenance and such provisions are unconscionable at the time of enforcement of such provisions." Husband argued that by the plain language of this subsection, only provisions of a marital agreement that pertain to maintenance are reviewable for unconscionability at the time of enforcement. Therefore, Husband concluded, the court could not review the waiver of attorney's fees for unconscionability.

The trial court denied Husband's motion for summary judgment. The court first stated that at common law waivers of both maintenance and attorney's fees were unenforceable if unconscionable at the time of enforcement. The court consequently framed the question as being whether passage of the CMAA abrogated the common law with regard to attorney's fees. Noting that the CMAA makes no mention of attorney's fees, the court concluded it did not abrogate the common law. The court further concluded that attorney's fees "relate to" the determination, modification, or elimination of spousal maintenance for purposes of subsection 14–2–307(2). Following a hearing, the court determined that the waiver of attorney's fees was unconscionable [3] and awarded Wife attorney's fees in its Permanent Orders.[4]

Husband appealed, arguing that the trial court erred in denying his motion for summary judgment and in awarding Wife attorney's fees. The court of appeals agreed and therefore reversed the trial court. *In re Marriage of Ikeler*, 148 P.3d 347, 353 (Colo.App. 2006). In conducting its analysis, the court of appeals looked no further than subsection 14–2–307(2). *Id.* Relying on the plain language of that subsection, the court of appeals concluded that "the only provision in a marital agreement that may be reviewed for unconscionability is maintenance." *Id.* We granted certiorari to review this decision, and we now reverse.[5]

## II. Standard of Review

We review the court of appeals' interpretation of the CMAA de novo. *In re Marriage of Chalat*, 112 P.3d 47, 54 (Colo. 2005). Our main task in construing statutes is to ascertain and give effect to the intent of the General Assembly. *Id.; People v. Dist. Court*, 713 P.2d 918, 921 (Colo.1986). We begin with the plain language of the statute to ascertain the General Assembly's intent. *Dist. Court*, 713 P.2d at 921. If the plain language is ambiguous or conflicts with other provisions of the statute, we may look beyond the language of the statute to other factors. *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002); *Buckley v. Chilcutt*, 968 P.2d 112, 117 (Colo.1998). To reasonably effectuate the General Assembly's intent, moreover, a stat-

3. The trial court also found the waiver of maintenance in the marital agreement to be unconscionable. The court based its conclusion on the fact that when the marital agreement was signed, Wife was healthy and gainfully employed. After the birth of the triplets, however, Wife stopped working outside the home and had no means to support herself or the triplets. Moreover, during the course of the marriage, Wife's mental and physical health deteriorated. The court found that Husband, on the other hand, had a net worth of approximately $10 million and an annual income of approximately $300,000. Husband has not appealed these factual findings.

4. Based on the testimony of Wife's expert, the trial court awarded $58,082 plus $5,000 for Wife's expert witness fees and expenses. The parties litigated Wife's entitlement to and amount of maintenance as well as the custody of the triplets and the amount of child support for which each party was responsible. Although a portion of Wife's attorney's fees were certainly

incurred to litigate the issues concerning the children, the trial court did not breakdown the award of attorney's fees into the portions that dealt with the maintenance dispute as opposed to the child support and custody dispute.

5. We granted certiorari on the following issues:

(1) Whether the adoption of the Colorado Marital Agreement Act, sections 14–2–301 to –310, C.R.S. (2006) as amended, eliminated the common law review of unconscionability for a waiver of attorney fees in a marital agreement. (2) Whether the strict enforcement of waiver of attorney fees in a marital agreement affects a child's right to child support, when the issue of child support is litigated in the dissolution of marriage. (3) Whether the waiver of attorney fees in a marital agreement is void as against public policy when the issues being litigated include spousal maintenance, child support, and allocation of parental responsibilities.

ute must be read and considered as a whole. *Buckley,* 968 P.2d at 117; *Dist. Court,* 713 P.2d at 921. We will interpret a statute to give consistent, harmonious, and sensible effect to all its parts. *Dist. Court,* 713 P.2d at 921. "If separate clauses within a statute may be reconciled by one construction but would conflict under a different interpretation, the construction which results in harmony rather than inconsistency should be adopted." *Id.*

### III. Analysis

Marital agreements in Colorado are governed by the CMAA, which was passed by the General Assembly in 1986. The court of appeals' analysis in this case focused exclusively on subsection 14–2–307(2) of the CMAA, which addresses the enforcement of marital agreements. *Ikeler,* 148 P.3d at 353. Based on this subsection, the court of appeals concluded that the CMAA's plain language limited unconscionability review of marital agreements to those provisions regarding spousal maintenance. *Id.* By reading subsection 14–2–307(2) in isolation rather than considering the CMAA as a whole, however, the court of appeals failed to consider that subsection 14–2–307(2) conflicts with the CMAA's provisions regarding the content of marital agreements. Because of this conflict in the plain language of the CMAA's provisions, we must look beyond the plain language of the statute to determine whether the legislature intended for a waiver of attorney's fees to be reviewable for unconscionability.

### A. The CMAA's Conflicting Provisions

The content of marital agreements is controlled by section 14–2–304 of the CMAA, which lists those subjects to which parties may validly contract in a marital agreement. For example, the CMAA specifically provides that parties may contract to "[t]he determination, modification, or elimination of spousal maintenance." § 14–2–304(1)(d), C.R.S. (2006). The CMAA does not, however, specifically mention attorney's fees. § 14–2–304; *Ikeler,* 148 P.3d at 354 (Davidson, C.J., specially concurring). The only statutory basis for parties to contractually waive an award of

attorney's fees is therefore the catch-all provision, which allows parties to contract to "[a]ny other matter, including the personal rights or obligations of either party, *not in violation of public policy* or any statute imposing a criminal penalty." § 14–2–304(1)(i), C.R.S. (2006) (emphasis added). Under this subsection, if a waiver of attorney's fees violates public policy it cannot be enforced by the court because it is not a valid contract term.

When we turn to subsection 14–2–307(2), upon which the court of appeals relied, we find that the CMAA states that an otherwise enforceable marital agreement "is nevertheless unenforceable insofar, *but only insofar,* as the provisions of such agreement ... relate to the determination, modification, or elimination of spousal maintenance and such provisions are unconscionable at the time of enforcement of such provisions." § 14–2–307(2) (emphasis added). This subsection therefore purports to limit unconscionability review to maintenance provisions, seemingly to the exclusion of a waiver of attorney's fees. The conflict between this and subsection 14–2–304(1)(i), however, is apparent. Unconscionable contract provisions, particularly in the context of marital agreements, are unconscionable precisely because they violate public policy. *See Newman v. Newman,* 653 P.2d 728, 734–36 (Colo.1982) (holding that maintenance provisions in a premarital agreement are reviewable for unconscionability at the time of the dissolution based on public policy principles); Richard A. Lord, 8 *Williston on Contracts* § 18:7 (4th ed. 1998) ("[W]here there is a strong public policy against a particular practice, a contract or clause inimical to that policy will likely be declared unconscionable and unenforceable unless the policy is clearly outweighed by some legitimate interest in favor of the individual benefited by the provision.").

We therefore find a conflict in the CMAA between subsection 14–2–307(2), which on its face only allows unconscionability review of marital agreement provisions that relate to maintenance, and subsection 14–2–304(1)(i), which prohibits the parties from contracting to terms that violate public

policy. To ascertain the General Assembly's intent with regard to attorney's fees, therefore, we must look beyond the CMAA's language.[6] We consider such factors as legislative history, prior law, the consequences of a particular construction, and the goal of the statutory scheme in attempting to ascertain legislative intent. *Luther*, 58 P.3d at 1015; § 2–4–203, C.R.S. (2006). Our task is to choose a construction that gives effect to the legislature's intent and that serves the purpose of the overall statutory scheme. *In re Marriage of Cargill and Rollins*, 843 P.2d 1335, 1338 (Colo.1993); *In re Marriage of Rose*, 134 P.3d 559, 562 (Colo.App.2006).

## B. Legislative History

The General Assembly's overriding intent in passing the CMAA was to codify Colorado's common law regarding marital agreements. Representative Scott McInnis, the bill's sponsor in the House of Representatives, stated that the bill was only intended to codify Colorado's case law and to incorporate the relevant statutes into a single statute governing marital agreements. *See Hearing on H.B. 86–1212 Before the H. Comm. on Judiciary*, 55th Legis.2d Reg. Sess. (Feb. 18, 1986). The only witness who testified about the bill, Laura Vogelgesang, was a member of the Colorado Bar Association's Probate and Trust Law Section, which helped draft the bill. Ms. Vogelgesang testified that the drafters' intent was to codify in a single statute Colorado's then-existing case law and statutes in order to prevent adoption of the Uniform Premarital Agreement Act in Colorado. *Id.* At the time of the CMAA's adoption, however, no case had addressed the specific question whether a waiver of attorney's fees in a marital agreement could be reviewed by a court for unconscionability at the time of enforcement. There was also no discussion of attorney's fees in either the House or the Senate prior to passage of the bill. The legislative history, therefore, does little to shed light on whether the General Assembly intended for a waiver of attorney's fees to be reviewable for unconscionability. The legislative history instead suggests that the subject of attorney's fees was simply never considered.

## C. Attorney's Fees

We next turn to the public policy underlying an award of attorney's fees and the law concerning attorney's fees that existed prior to the CMAA's passage. After considering these factors, we conclude that the General Assembly did not intend to preclude courts from reviewing waivers of attorney's fees in marital agreements for unconscionability at the time of enforcement. Rather, a waiver of attorney's fees in a marital agreement that is unconscionable at the time of the dissolution violates public policy and therefore may not be enforced under subsection 14–2–304(1)(i) of the CMAA, because it is not a valid contract term.

The public policy underlying an award of attorney's fees in a marital dissolution proceeding is established in the Uniform Dissolution of Marriage Act, sections 14–10–101 to –133, C.R.S. (2006) ("UDMA") and has been articulated in the case law. The trial court's authority to award attorney's fees in a marital dissolution proceeding rests in section 14–10–119, C.R.S. (2006), which provides in relevant part:[7]

> The court from time to time, *after considering the financial resources of both parties,* may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this article and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment.

§ 14–10–119 (emphasis added).

An award of attorney's fees is one of the tools that the General Assembly provided the courts in order to carry out its

---

6. The CMAA's silence on the subject of attorney's fees also creates an ambiguity allowing us to look to other tools of statutory interpretation to ascertain legislative intent. *See Buckley*, 968 P.2d at 117.

7. A court can also award attorney's fees under section 13–17–102, C.R.S. (2006). *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo.1997). The applicability of this statute, however, is not before us.

stated objective of "mitigat[ing] the potential harm to the spouses and their children caused by the process of legal dissolution of marriage." § 14–10–102(2)(b), C.R.S. (2006). Attorney's fees are intended to equalize the parties and ensure neither party suffers undue economic hardship because of the dissolution of marriage. *In re Marriage of Aldrich*, 945 P.2d 1370, 1377 (Colo.1997); *In re Marriage of Franks*, 189 Colo. 499, 508, 542 P.2d 845, 851–52 (1975); *In re Marriage of Lee*, 781 P.2d 102, 105 (Colo.App.1989). An award of attorney's fees is based on the same underlying premise as an award of spousal maintenance—to provide the lesser-earning spouse with food, clothing, and shelter. *Allison v. Allison*, 150 Colo. 377, 379, 372 P.2d 946, 947 (1962); *In re Marriage of Dechant*, 867 P.2d 193, 196 (Colo.App.1993); *Lee*, 781 P.2d at 105.

Although this court has never decided whether a waiver of attorney's fees in a marital agreement can be reviewed for unconscionability, we ruled prior to the CMAA's adoption that the maintenance provisions of a marital agreement are subject to review for unconscionability. *Newman*, 653 P.2d at 734–35. In *Newman*, we first determined that marital agreements as to maintenance do not per se violate public policy.[8] *Id.* at 734. An agreement reached after full disclosure and in the absence of fraud and overreaching is valid. *Id.* We went on to hold, however, that a valid maintenance pro-

vision in a marital agreement "may become voidable for unconscionability occasioned by circumstances existing at the time of the marriage dissolution." *Id.* This holding was based, in part, on Colorado's public policy of mitigating the harm to spouses caused by the dissolution of a marriage.[9] *Id.* at 734–35. The court explained:

> The policy to mitigate against potential harm is consistent with the legitimate governmental interest of the state generally to protect the health and welfare of its citizens. It is not unrealistic to recognize that the health and employability of the spouse may have so deteriorated during a marriage that to enforce the maintenance provisions of an antenuptial agreement would result in the spouse becoming a public charge. Thus, we do not subscribe to the view that the antenuptial agreement, even though entered into in accordance with the strict tests heretofore alluded to, is strictly enforceable regardless of intervening events which have rendered it in effect unconscionable.

*Id.* at 735. We further noted that the public policy interest behind protecting spouses outweighed the parties' rights to freedom of contract. *Id.* at 736 n. 8. The General Assembly codified the *Newman* holding in subsection 14–2–307(2) of the CMAA, which is the subsection that the court of appeals relied upon in this case. *See Hearing on H.B.*

---

**8.** *Newman* also held that marital agreements as to property division are neither void as against public policy generally, nor are they subject to review for unconscionability. 653 P.2d at 731, 733–34. In *Newman*, we drew a strict distinction between provisions of a marital agreement concerning property and those concerning maintenance. *Id.* at 734–35. We ruled that marital agreements as to property division were not reviewable for unconscionability because "there is no announced public policy in this state which voids such contracts." *Id.* at 734. We concluded that maintenance provisions, however, were subject to conscionability review because of well-established public policy. *Id.* at 734–35. As we explain today, the same policy that requires review of maintenance provisions for unconscionability *also applies to waivers of attorney's fees.* Our holding today, however, *in no way alters* the distinction between property provisions of marital agreements and those concerning maintenance and attorney's fees. Provisions regarding property division, as long as entered into after

full disclosure and in the absence of fraud or overreaching, are not subject to review for unconscionability.

**9.** We also based our decision on a comparison of the UDMA's provisions concerning court-ordered property distribution and court-ordered maintenance. *Newman*, 653 P.2d at 735. Section 14–10–113 allows a court to distribute marital property *except* that property excluded by an agreement of the parties. § 14–10–113(2)(d), C.R.S. (2006). Section 14–10–114, on the other hand, authorizes a court to order maintenance but provides no exception for a marital agreement of the parties. § 14–10–114(3)–(4), C.R.S. (2006). We viewed this distinction as "evidence of a legislative intent not to preclude examination of antenuptial maintenance agreements for conscionability." *Newman*, 653 P.2d at 735. Similarly, section 14–10–119, which authorizes a court to award attorney's fees, does not contain an exclusionary provision for prior agreements of the parties. *Dechant*, 867 P.2d at 196.

*86–1212 Before the S. Comm. on Judiciary,* 55th Legis.2d Reg. Sess. (Mar. 12, 1986).

 Colorado case law both prior and subsequent to the passage of the CMAA has recognized that awards of spousal maintenance and attorney's fees are based on the same public policy considerations. *See, e.g., Allison,* 150 Colo. at 379, 372 P.2d at 947; *In re Marriage of Mockelmann,* 944 P.2d 670, 671 (Colo.App.1997); *Dechant,* 867 P.2d at 196; *Lee,* 781 P.2d at 105. As we explained in *Franks,* a case decided prior to passage of the CMAA:

> The provision in the dissolution of marriage statute which sanctions the assessment of attorney's fees was intended to equalize the status of the parties to the dissolution proceeding. Where two parties have undertaken the obligations implicit in the marriage relationship, it becomes the duty of the courts upon the dissolution of that relationship to ensure that neither is forced to suffer unduly as a consequence of its termination. One spouse may have foregone earning potential in performing the domestic duties involved in maintaining the marital domicile, to the end that the other spouse might devote his full potential to the earning of income for the family. It would be inequitable upon dissolution to saddle the former with the burden of his reduced earning potential and allow the latter spouse to continue in an advantageous position which was reached through a joint effort. *Thus, the dissolution of marriage statute, in an effort to eliminate the inequities resulting from the termination of the relationship, provides for attorney's fees, as well as maintenance and child support, when the relative status of the parties involved indicates the need of such.*

189 Colo. at 508, 542 P.2d at 851–52 (emphasis added).

Given the similar public policy underlying both maintenance and attorney's fees, we conclude that public policy precludes enforcement of a waiver of attorney's fees that has become unconscionable just as a maintenance

provision that has become unconscionable is unenforceable. *Newman,* 653 P.2d at 734–35; *Dechant,* 867 P.2d at 196 (holding that under pre-CMAA law a waiver of attorney's fees in a marital agreement is reviewable for unconscionability). It has long been the public policy of this state to equalize the status of the parties in a dissolution proceeding through awards of maintenance and attorney's fees. § 14–10–102(2)(b); *see, e.g., Newman,* 653 P.2d at 734–35; *Franks,* 189 Colo. at 508, 542 P.2d at 851–52; *Peercy v. Peercy,* 154 Colo. 575, 581, 392 P.2d 609, 612 (1964) ("The law is solicitous to achieve fairness in domestic relations cases...."); *Allison,* 150 Colo. at 379, 372 P.2d at 947; *Tower v. Tower,* 147 Colo. 480, 485, 364 P.2d 565, 568 (1961); *Miller v. Miller,* 79 Colo. 609, 613–14, 247 P. 567, 568–69 (1926). This public policy existed long before passage of the CMAA in 1986. Given the CMAA's silence on the subject of attorney's fees, we cannot find that the General Assembly intended to abrogate the common law. *Preston v. Dupont,* 35 P.3d 433, 440 (Colo.2001) ("A statute is not presumed to alter the common law except to the extent that such statute expressly provides."). Rather, the legislative history makes clear the General Assembly intended to codify the common law.

 Moreover, a waiver of attorney's fees violates public policy where one spouse lacks the financial resources to litigate the dissolution, and the case involves issues of parental responsibilities and child support. The CMAA specifically states that "[a] marital agreement may not adversely affect the right of a child to child support," § 14–2–304(3), C.R.S. (2006), which reflects the well-established policy of this state that the needs of the children in a dissolution proceeding are paramount. *Chalat,* 112 P.3d at 53. If one spouse is unable to hire an attorney, and the parties waived a possible award of attorney's fees in a marital agreement, the lesser-earning spouse's ability to effectively litigate the issues related to the children will be substantially impaired.[10] This, in turn, may

---

10. This case presents a good example of such a situation. In its Permanent Orders, the trial court found that "Wife was in dire need of com-

petent legal representation ... for several reasons, including obtaining a restraining order, litigating the issues regarding the enforceability

negatively impact the court's ability to assess the best interests of the children. *See Ikeler,* 148 P.3d at 354-55 (Davidson, C.J., specially concurring); *In re Marriage of Burke,* 96 Wash.App. 474, 980 P.2d 265, 268 (1999) ("The state's interest in the welfare of children requires that the court have the discretion to make an award of attorney fees and costs so that a parent is not deprived of his or her day in court by reason of financial disadvantage.").[11]

We therefore hold that the trial court may evaluate whether a waiver of attorney's fees in a marital agreement is unconscionable at the time of the dissolution. If the provision is unconscionable, it violates public policy and under subsection 14-2-304(1)(i) is not binding on the court. This result best effectuates the General Assembly's intent and ensures that Colorado's long-standing practice of protecting spouses and children in dissolution proceedings continues. We stress that this holding is limited to waivers of attorney's fees in marital agreements, and should only be read as such.

## IV. Request for Attorney's Fees

Wife has requested that we award her attorney's fees under section 14-10-119 for this appeal. We leave "the determination of entitlement to or the amount of any attorney fees" to the trial court on remand. C.A.R. 39.5; *Chalat,* 112 P.3d at 59.

## V. Conclusion

In sum, we hold that a trial court may review a waiver of attorney's fees in a mari-tal agreement for unconscionability at the time of enforcement, because an unconscionable waiver violates public policy and thus is not a valid contract term under CMAA subsection 14-2-304(1)(i). The court of appeals' holding that the trial court erred in denying Husband's motion for summary judgment and in awarding Wife attorney's fees is therefore reversed. We uphold the trial court's award of attorney's fees and remand this case for a determination of Wife's entitlement to and amount of attorney's fees on this appeal.

Justice EID specially concurs, and Justice MARTINEZ and Justice BENDER join in the special concurrence.

Justice EID, specially concurring.

Under the rationale adopted by the majority today, a district court can conduct an unconscionability review of *all* provisions of a marital agreement. Yet the legislature has permitted such review *"insofar, but only insofar,* as the provisions of such agreement ... relate to" the determination of spousal maintenance. § 14-2-307(2), C.R.S. (2006) (emphasis added). In my view, the attorney's fees waiver provision at issue in this case can be reviewed for unconscionability not because *all* provisions in a marital agreement can be subjected to such review, as the majority effectively holds, but because it "relates to" the determination of spousal maintenance. On this ground, I specially concur with the judgment.

---

of the [marital agreement], ferreting out information about Husband's businesses and income, and litigating issues regarding the children."

**11.** We comment briefly on why we do not adopt the trial court's holding that attorney's fees "relate to" the "determination, modification, or elimination of spousal maintenance" for purposes of *subsection 14-2-307(2).* Assuming arguendo that "relate to" can be read broadly enough to encompass an award of attorney's fees, doing so would necessarily open up agreements concerning property division to review for unconscionability. Under the UDMA, a trial court may only award maintenance after consideration of "[t]he financial resources of the party seeking maintenance, *including marital property apportioned to each party* ...." § 14-10-

114(4)(a), C.R.S. (2006) (emphasis added). Clearly, therefore, property division "relates to" the determination of maintenance as much, if not more so, than do attorney's fees. Such a result, however, would run counter to the General Assembly's intent as reflected in the plain language of the CMAA. *See* § 14-2-304(1)(a)-(c), C.R.S. (2006) (allowing parties to contract to property rights with no exception for marital agreements that are unconscionable or in violation of public policy); *cf.* § 14-10-113(2)(d) (under the UDMA, marital property excluded by agreement of the parties is not subject to court distribution). This result would also abrogate the common law established in *Newman,* even though the General Assembly did not expressly do so when passing the CMAA.

### A.

The Colorado Marital Agreement Act, sections 14–2–301 to –310, C.R.S. (2006) (the "CMAA"), permits parties to contract about a broad array of subjects in a marital agreement. Indeed, subsection 14–2–304(1)(i) allows parties to contract as to *"[a]ny ... matter,* including the personal rights or obligations of either party," so long as it is "not in violation of public policy or any statute imposing a criminal penalty." (emphasis added). We have never held, and the majority does not hold today, that marital agreements providing for the waiver of attorney's fees are *per se* against public policy at the time of contracting.

The CMAA does provide, however, for a limitation on the enforcement of a marital agreement. Subsection 14–2–307(2) states that an "otherwise enforceable" agreement "is nevertheless unenforceable insofar, but only insofar, as the provisions of such agreement ... relate to the determination, modification, or elimination of spousal maintenance and such provisions are unconscionable *at the time of enforcement of such provisions."* (emphasis added). Thus a provision in a marital agreement might be consistent with public policy at the time the agreement is made, but might later become unconscionable at the time the agreement is enforced. Subsection 14–2–307(2) specifically limits this latter form of review to marital provisions "relat[ing] to" the determination of spousal maintenance.

Sections 14–2–304 and 14–2–307 can be read harmoniously because they focus on different periods in the life of the marital agreement. Section 14–2–304 allows parties to contract about any matter as long as it is not in violation of public policy at the time of contracting. Section 14–2–307 allows unconscionability review only of those provisions that "relate to" the determination of spousal maintenance when those provisions have become unconscionable at the time of enforcement.

The majority mixes apples with oranges when it holds that "a waiver of attorney's fees in a marital agreement that is unconscionable at the time of the dissolution violates public policy and therefore may not be enforced under subsection 14–2–304(1)(i)." Maj. op. at 668. An attorney's fee provision such as the one at issue in this case does not violate public policy, because if it did, then it would be void from the beginning, *ab initio. See Otte v. Pierce,* 118 Colo. 123, 129, 194 P.2d 331, 333 (1948); *see also Benham v. Heyde,* 122 Colo. 233, 241, 221 P.2d 1078, 1082 (1950) (holding that contracts forbidden by state statute are "absolutely void *ab initio"*). It would not depend, as the majority suggests, on the unconscionability of the agreement "at the time of enforcement." Maj. op. at 668. Because the majority views the public policy inquiry as the equivalent of unconscionability review, it concludes—mistakenly in my view—that subsections 14–2–304(1)(i) and 14–2–307(2) are in irreconcilable conflict. *See id.* at 667. By choosing to enforce subsection 14–2–304(1)(i)'s public policy language, the majority invalidates subsection 14–2–307(2) and its limitations on unconscionability review. *See id.* at 671.

The result of the majority's decision is that Colorado courts now have the authority to review *all* aspects of marital agreements for unconscionability. While the majority states that its holding is limited to waivers of attorney's fees in marital agreements, *see id.* at 671, its rationale applies equally to all subjects that could be included in a marital agreement. Subsection 14–2–304(1)(i)'s reference to "public policy" applies to "[a]ny matter," not simply attorney's fees. By equating unconscionability review with public policy, the majority opens up any matter in a marital agreement to such after-the-fact unconscionability review. This result is problematic not only because it contravenes subsection 14–2–307(2)'s specific limitation on such review, but also because it frustrates the legislature's objective, captured in the language of subsection 14–2–304(1)(i), to permit parties to a marital agreement to contract about a broad array of matters not in violation of public policy. Thus, in my view, the majority fails to give effect to either subsection of the CMAA at issue in this case.

### B.

Despite my disagreement with the majority on the question of whether the statutory

provisions conflict, I nevertheless agree with the result it reaches on the ground that the attorney's fees waiver provision in this case "relate[s] to" the determination of spousal maintenance under subsection 14–2–307(2).

"Relate to" is a broad statutory term meaning "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting *Black's Law Dict.* 1158 (5th ed.1979)). Thus terms like "relating" or "relate to" have been repeatedly interpreted by this court and others as encompassing all issues surrounding the underlying subject matter. *See, e.g., City & County of Denver v. Dist. Court*, 939 P.2d 1353, 1366 (Colo.1997) (giving broad definition to the phrase "relating to" in an arbitration agreement); *Morales*, 504 U.S. at 383, 112 S.Ct. 2031 (holding that federal air traffic law's use of the phrase "relating to" reveals its broad scope); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (explaining that "[a] law 'relates to' an employee benefit plan [under ERISA], in the normal sense of the phrase, if it has a connection with or reference to such a plan"). Giving the same broad scope to subsection 14–2–307(2), the waiver provision "relates to" the determination of spousal maintenance because the attorney's fees were expended in the pursuit of wife's claim to spousal maintenance.

We have previously noted the close connection between spousal maintenance and attorney's fees expended on seeking an award of spousal maintenance. *See Allison v. Allison*, 150 Colo. 377, 379, 372 P.2d 946, 947 (1962). The court of appeals has followed suit, holding that an award of attorney's fees "is based upon the same underlying premise as an award of maintenance, *i.e.*, financial need." *In re Marriage of Dechant*, 867 P.2d 193, 196 (Colo.App.1993); *see also In re Marriage of*

*Lee*, 781 P.2d 102 (Colo.App.1989). As we explained in *Allison*, attorney's fees are awarded "for the benefit of [a spouse] to put [him or] her in a position to litigate on the same footing as the [other spouse]," and thus they are awarded "on the same basis as" spousal maintenance. 150 Colo. at 379, 372 P.2d at 947. In other words, long before the enactment of the CMAA, Colorado law recognized that attorney's fees expended in pursuit of spousal maintenance relate to the ultimate determination of spousal maintenance.[1]

Husband argues that the waiver provision does not relate to spousal maintenance based on the plain language of the statute, but he makes that argument without offering a definition of "relate to." He seems to be arguing that the waiver provision does not "relate to" spousal maintenance because it does not specifically mention attorney's fees expended pursuant to a claim for spousal maintenance. But the statute does not require such specificity in the provision; in other words, it does not state that a provision is unenforceable if it "*specifically* relate[s] to the determination, modification, or elimination of spousal maintenance." *Cf. Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 37, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) (contrasting the broad statutory phrase "relates to" with the more narrow statutory phrase "specifically relates to"). Husband wants to add the term "specifically" to the statute, and it simply is not there. *See Turbyne v. People*, 151 P.3d 563, 567 (Colo.2007) ("We do not add words to the statute or subtract words from it." (citations omitted)).

In its permanent orders, the trial court awarded attorney's fees only in connection with its determination of spousal maintenance. *See* Permanent Orders at 1 (section entitled "Maintenance and Attorney's Fees"). Because those fees were expended in connection with the determination of spousal main-

---

1. By contrast, Colorado law has recognized a sharp distinction between spousal maintenance and property division, as the majority itself recognizes. *See* maj. op. at 669 n. 8 (citing *Newman v. Newman*, 653 P.2d 728, 734–35 (Colo.1982)). The majority invokes this distinction as a limita-

tion on its interpretation of "public policy." *See id.* at 671. Similarly, such a distinction would come into play when interpreting the "relate to" language of subsection 14–2–307(2), the majority's suggestion to the contrary notwithstanding. *See id.* at 671 n. 11.

tenance, the waiver provision "relates to" the determination of spousal maintenance. I therefore agree with the majority that the provision can be reviewed for unconscionability and would reverse the court of appeals. Accordingly, I concur in the majority's judgment.

I am authorized to state that JUSTICE MARTINEZ and JUSTICE BENDER join in this special concurrence.